# CASES DETERMINED

AT THE

## *June Term, 1873.*

---

### SMITH vs. BOUCK and another.

(1–6) *Statute of Frauds — Sale of scrip — When third party may be treated as agent of purchaser.* (7) *Mortgage : When deed absolute on its face may be shown to be mortgage, by parol evidence.*

1. A. owned lands, which were to be offered for sale at public auction, and in payment for which he was willing or obliged to receive certain land scrip, owned by B., and which B. desired to sell. C. wished to purchase some of the lands at the sale, and had been at some trouble and expense to examine them, and prepare lists of such as he wished to buy. B. and C. both attended the sale, the former to sell his scrip, and the latter to purchase the lands. C., having no money to pay for the land or the scrip, applied to B. to sell him the scrip on a credit of one year, B. to take title to the lands at the sale, and hold them as security for the payment of the price of the scrip and interest. B. accepted the proposition of C., and it was thereupon agreed between them that C. should bid off the lands in the name of B. as purchaser, and C. did so, and the lands were conveyed to B. in pursuance of the bids so made. B. paid the purchase price by delivering the scrip to A., the vendor of the lands. The agreement between B. and C. was merely verbal, and no writings passed between them. The price of the scrip was more than fifty dollars; and no part of the scrip was delivered to C.; nor did he pay any part of the purchase money therefor, or advance anything toward payment for the lands. *Held*, that under the statute of frauds (R. S., ch. 107, sec. 3), there was no valid sale of the scrip by B. to C.

2. The fact that C. had been at trouble and expense in examining the lands, etc., cannot be treated as a payment by him to B. of part of the purchase money for the scrip; such trouble and expense having been incurred in his own behalf, before the alleged agreement for the purchase of the scrip was made, and without any reference to it.

3. For the purpose of taking the case out of the statute on the 'ground that he "accepted and received" the scrip in question, C. cannot show by oral evidence that B. delivered the scrip *at his request* to A. in payment for the land. The transaction being on its face simply a receipt of the scrip by A. *as vendor of the land*, and there being no proof of any previous or contemporaneous agreement between C. and A. that the latter should become the agent of the former for the acceptance of the scrip, evidence that he was designated as such agent by oral agreement between B. and C. is merely evidence to establish the oral contract itself for the sale of the scrip, and as such is inadmissible under the statute.

4. The statute contemplates the payment and receipt of part of the purchase money, or delivery and receipt of all or a part of the goods sold, as transactions between the buyer and seller in person; or that if an agency in behalf of either intervenes, it shall be created by some means independent of the mere verbal contract which the statute declares void.

5. The fact that C. (or some one acting for him) attended the sale and bid off the land for B., has no effect to take the alleged sale of the scrip to C. out of the statute.

6. *Janvrin v. Maxwell* (23 Wis., 51), distinguished from this case.

7. Whether, in case the alleged sale of scrip to C. were valid, the deed from A. to B. of the lands of A. thus bid off in the name of B. could be shown by oral evidence to be only a mortgage to secure the payment by C. of the purchase money of said scrip, is not here decided. The case distinguished in that respect from *Sweet v. Mitchell* (15 Wis., 641–665), where the relation of debtor and creditor between the alleged mortgagor and mortgagee was established by written evidence.

APPEAL from the Circuit Court for *Outagamie* County.

Action to establish, in plaintiff's favor, an equity of redemption in certain lands alleged by him to have been purchased for his benefit, of the Chicago & Northwestern Railway Company, but in the name of the defendant *Clark*, under a verbal agreement between them, that the latter should sell to the plaintiff

certain land scrip issued by that company and which they were bound to receive in payment for land, to be used in the purchase of such lands as plaintiff should select, and should hold the lands as security for the payment of the price of such scrip and interest; which lands the defendant *Bouck* subsequently purchased of the defendant *Clark* with full knowledge of plaintiff's claims. Plaintiff sought also to compel a conveyance of the lands to him upon his redeeming them, and an accounting for the value of such of them as had been subsequently sold by the defendant *Bouck* to *bona fide* purchasers; and to recover the value of timber cut and taken from the lands by *Bouck.*

The facts in regard to the sale of the scrip and the purchase of the lands sufficiently appear in the opinion of the court.

It was stipulated by the parties, upon the trial, that only the question of the right of redemption should then be tried, and the question of an accounting should be determined after a final decision upon the former issue in this court. Judgment was rendered in favor of the plaintiff; from which the defendants appealed.

*Gabe Bouck*, for appellants :

The transaction between *Clark* and plaintiff does not constitute a mortgage. Here was no mortgagor capable of conveying, no estate conveyed by him, nor debt secured thereby. 4 Kent's Com., 136; 1 Greenl. Cruise, 545, 548; 2 Story's Eq. Jur., § 1018; Powell on Mortg., ch. 2, p. 24, ch. 3, p. 77 ; *Pratt v. Ayer*, 3 Chand., 265; *Hill v. Grant*, 46 N. Y., 496; *Lund v. Lund*, 1 N. H., 39; *Slowey v. McMurray*, 27 Mo. (6 Jones), 113; *Holmes v. Grant,* 8 Paige, 243; *Brown v. Dewey*, 2 Barb., 28, 172; *Flagg v. Mann*, 14 Pick., 467; *Kelley v. Bryan*, 6 Ired. Eq., 283; *McKinstry v. Conly*, 12 Ala., 678; *Rich v. Doanes*, 35 Vt., 125; *Kirby v. Harrison*, 2 Ohio St., 326; *Rumington v. Kelley*, 7 Ohio, 432; *Benedict v. Lynch*, 1 Johns. Ch., 374; *Alley v. Deschamps*, 13 Ves., 224; *Gentry v. Rogers*, 40 Ala., 442; *Drew v. Smith*, 7 Minn., 301; *Dahl v. Pross*, 6 id., 89; 2 Hilliard on Mortg., 37; 1 id., 61–74; 6 Mod., 3; *Greene v. Cook*

29 Ill., 186; *Wynkoop v. Cowing*, 21 Ill., 570.   2. If this transaction was an agreement for the sale of land, it was void. No part of the consideration was paid, nor was possession taken.  6 Wis., 167; 8 id., 265; 13 id., 142.   The knowledge *Smith* had of the lands was not a consideration.  *Smith v. Wood*, 12 Wis., 382; *Hanson v. Michelson*, 19 id., 498; *Wentworth v. Wentworth*, 2 Minn., 277; Willard's Eq., 263, 266; 2 Story's Eq. Jur., § 571; *Eaton v. Eaton*, 15 Wis., 259; *Seymour v. Delancey*, 6 Johns. Ch. 222.  3. The contract was not binding upon *Smith*, and specific performance cannot he enforced.  Tay. Stats., Ch. 61, § 1, p. 838; Willard's Eq., 267; Story's Eq. Jur., § 776; Fry on Spec. Perf., § 286; *Benedict v. Lynch*, 1 Johns. Ch., 370; *Germain v. Machin*, 6 Paige, 288; *Jones v. Noble*, 3 Bush (Ky.), 694; *Snyder v. Neefus*, 53 Barb., 163; *Getman v. Getman*, 1 Barb. Ch., 499; *Lawrenson v. Butler*, 1 Schoales & Lef., 13; *Bromley v. Jefferies*, 2 Vern., 415; *Woodward v. Harris,* 2 Barb., 439; *Rogers v. Joyce*, 4 Me., 93; *Bronson v. Cahill*, 4 McLean, 19; *Tyson v. Watts*, 1 Md. Ch., 13; *Beard v. Linthicum*, id., 345; *Bean v. Burbank*, 16 Me., 458; *Woodward v. Harris*, 2 Barb., S. C., 439; *Crawford v. Paine*, 19 Iowa, 173; *Magoffin v. Holt*, 1 Duval (Ky.), 95.   4. Plaintiff does not show that he is not in default, or that his negligence was excusable or acquiesced in.   *Cheney v. Cook*, 7 Wis., 413; *Spurrier v. Hancock*, 4 Ves., 667; *Harrington v. Wheeler*, id., 686; *Milward v. Thanet*, 5 id., 720, note; *Guest v. Homfray*, 5 id., 818; 2 Story's Eq. Jur., § 776; Willard's Eq., 291; *Watts v. Waddle,* 6 Pet., 389; *King v. Hamilton*, 4 id., 311, 329; *Brashier v. Gratz*, 6 Wheat., 528; *Pratt v. Carroll*, 8 Cranch, 471.   Laches, either in the performance of the contract or in applying for relief, will prevent specific performance.   *Goldsmith v. Guild*, 10 Allen, 239; *Doloret v. Rothschild*, 1 Sim. & Stu., 590; *Hepburn v. Auld*, 5 Cranch, 262; *Richmond v. Gray*, 3 Allen, 25; *McBryde v. Weeks*, 22 Beav., 533; *Potter v. Tuttle*, 22 Conn., 512; *Jones v. Noble*, 3 Bush, 694; *Boucher v. VanBuskirk*, 2 A. K. Marsh., 345; *Allen v. Roberts.* 2 Bibb, 98; Newland on Cont., 154; *De Cordova v.*

Smith vs. Bouck and another.

*Smith*, 9 Texas, 129 ; *Higby v. Whittaker*, 8 Ohio, 198 ; *Dominick v. Michael*, 4 Sandf., 426 ; Fry on Spec. Perf., §§ 710, 713 ; *Wells v. Smith*, 2 Edw. Ch., 78 ; *S. C.*, 7 Paige, 22 ; *Smith v. Brown*, 5 Gilm. (Ill.), 309 ; 34 Ill., 38 ; id., 143 ; *Scott v. Fields*, 7 Ham. (Ohio), 424 ; *Benedict v. Lynch*, 1 Johns. Ch., 374 ; *Lloyd v. Callett*, 4 Bro. C. C., 469 ; *Pillow v. Pillow*, 3 Humph., 644 ; *Rogers v. Saunders*, 16 Me., 92 ; *Bullock v. Adams*, 20 N. J. Eq. (5 C. E. Greene), 367 ; *Gariss v. Gariss*, 16 N. J. Eq., 79 ; *Thorp v. Pettit*, id., 488 ; *Miller v. Henlan*, 51 Pa. St., 265 ; *Cox v. Boyd*, 38 Ala., 42 ; *Jordan v. Denton*, 23 Ark., 704 ; *Smith v. Lawrence*, 15 Mich., 499 ; *Reed v. Breeden*, 61 Pa. St., 460 ; Fry on Spec. Perf., §§ 730, 732, 736, 737, and cases cited ; *Haughwout v. Murphy*, 21 N. J. Eq., 119 ; *Meritt v. Brown*, id., 401 ; *Campbell v. Hicks*, 19 Ohio St., 433 ; *Hubbell v. Von Schoening*, 58 Barb., 498 ; *Green v. Covilland*, 10 Cal., 317 ; *Eads v. Williams*, 4 DeG., McN. & G., 691 ; *Alley v. Deschamps*, 13 Ves., 225 ; *Williams v. Williams*, 17 Beav., 213 ; *Frith v. Greenwood*, 1 Jur., N. S., 866 ; *Watson v. Reid*, 1 Russ. & M., 236 ; *In re Bishop of Exeter*, 6 Hare, 213 ; *Stuart v. London & N. W. Railway Co.*, 1 DeG., McN. & G., 721 ; *Lloyd v. Collett*, 4 Bro. C. C., 469 ; *Heaphy v. Hill*, 2 S. & S., 29 ; *King v. Wilson*, 6 Beav., 124 ; *Gentry v. Rogers*, 40 Ala., 442 ; 4 C. E. Greene (N. J.), 386 ; *Callen v. Ferguson*, 29 Pa. St., 247 ; *Colcock v. Butler*, 1 Dessaus., 307. 5. The transaction is not a valid trust. If an express trust, it must be in writing. R. S., ch. 106, sec. 6 ; Tay. Stats., 1254 ; *Rasdall's Adm'rs v. Rasdall*, 9 Wis., 379 ; *Pratt v. Ayer*, 3 Chand., 265 ; *Orton v. Knab*, 3 Wis., 576 ; *Whiting v. Gould*, 2 id., 552 ; Perry on Trusts, p. 50, § 79. It has none of the elements of a resulting, constructive or implied trust. R. S., ch. 84, secs. 6, 7, 8 and 9 ; Tay. Stats., 1029 ; Perry on Trusts, §§ 25, 27, 112, 126, 133, 134, 135, 137, 166, and cases cited ; *Burnett v. Dougherty*, 32 Pa. St., 371 ; *Kellum v. Smith*, 33 id., 158 ; *Sample v. Coulson*, 9 Watts & Serg., 62 ; *Lear v. Chouteau*, 23 Ill., 39 ; *Clawater v. Tetherow*, 27 Mo. (6 Jones), 241 ;

*Pattison v. Horn,* 1 Grant's Cases, 301 ; *Key v. Isett,* 1 Morris, 388 ; *Leshey v. Gardner,* 3 Watts & Serg., 314 ; 5 id., 372 ; 2 Stock. Ch., 308 ; 6 Hare, 213 ; Dart's Compendium, 580 ; *Parker v. Thorold,* 16 Beav., 61–2 ; Kerr on Fraud and Mistake ; *Phillips v. Stanch,* 20 Mich., 369 ; *Earl v. Halsey,* 1 McC. (N. J.), 332 ; *Burke v. Seely,* 46 Mo., 334 ; *Crane v. Decamp,* 21 N. J. Eq., 414 ; *Walker v. Hill,* id., 191 ; *Lawrence v. Lawrence,* id., 317.   6. The contract is within the statute of frauds, and void. *Wentworth v. Wentworth,* 2 Minn., 27 ; *Hocker v. Gentry,* 3 Met. (Ky.), 463 ; *Schmidt v. Gatewood,* 2 Rich. Eq., 162 ; *Lear v. Chouteau,* 23 Ill., 39 ; *Clawater v. Tetherow, supra ; Griffin v. Coffey,* 9 B. Mon., 452 ; 2 Story's Eq. Jur., 1201 ; *Wallace v. Brown,* 2 Stock. (N. J.), 308 ; *Campbell v. Campbell,* 2 Jones Eq. (N. C.), 364 ; *Stephenson v. Thompson,* 13 Ill., 186 ; *Perry v. McHenry,* id., 227 ; *Alexander v. Tams,* id., 221 ; *Merritt v. Brown, supra ; Price v. Evans,* 26 Mo. (5 Jones), 30 ; *Hammond v. Cadwallader,* 29 id., 166 ; 32 Pa. St., 371.   7. Specific performance cannot be decreed, when it is not within the power of the vendee to convey. Willard's Eq., 291 ; *Morss v. Elmendorf,* 11 Paige, 288 ; *Hatch v. Cobb,* 4 Johns. Ch., 559 ; *Kempshall v. Stone,* 5 id., 193 ; *Woodward v. Harris,* 2 Barb., 439.   8. A court of equity will compel a mortgagee to account for waste only to the amount of the mortgage debt.   9. As to the necessity of pleading the statute of frauds, the appellant, in a reply, filed by consent, cites the following authorities : 2 Story's Eq. Jur., § 767 ; *Walker v. Hill,* 21 N. J. Eq., 191 ; *Dean v. Dean,* 1 Stock. Ch., 425 ; *Ontario Bank v. Root,* 3 Paige, 478 ; *Coles v. Bowne,* 10 id., 526 ; *Hocker v. Gentry,* 3 Met. (Ky.), 464 ; *Fowler v. Lewis,* 3 A. K. Marsh., 445 ; *Brown v. East,* 5 Mon., 408 ; *Smith v. Fah,* 15 B. Mon., 443 ; *Haight v. Child,* 34 Barb., 186.

*Gillett & Taylor,* for respondent, with *A. S. Collins,* of counsel :

The contract between plaintiff and defendant *Clark* was for a sale of scrip, and was valid, and could have been enforced against plaintiff in an action at law. The payment of such scrip to the vendor of the lands was a payment to plaintiff's

use, and was, in effect, a delivery to him. This created an indebtedness on the part of plaintiff to defendant *Clark*, for which *Clark* held the lands as security. His title, therefore, is that of an equitable mortgagee, and the plaintiff has a right of redemption. Parol proof is admissible to show that a deed absolute in its terms is, in fact, a mortgage. *Wilcox v. Bates*, 26 Wis., 466; *Walker v. Rogan*, 1 Wis., 597; *Knowlton v. Walker*, 13 id., 264; *Carr v. Carr*, Albany Law J., Vol. 4, No. 8, Sept. 16, 1871, p. 125; *McClintock v. McClintock*, 3 Brews., 76; *Reitenbaugh v. Ludwick*, 31 Pa. St., 138. 2. Neither the refusal of *Smith* to give additional security, nor any mere *laches* on his part, could cut of his equity of redemption. *Knowlton v. Walker* and *Walker v. Rogan, supra;* *Russell v. Southard*, 12 How. (U. S.), 139; *Plato v. Roe*, 14 Wis., 453; *Orton v. Knab*, 3 id., 576; *Briggs v. Seymour*, 17 id., 255. 3. The court should, if possible, so construe the contract as to make it valid and binding between the parties, and this may be done by treating it as a mortgage, and not as a parol agreement to convey lands. Coke on Litt., H. 42, 183; *Shore v. Wilson*, 9 Clark & F., 397; 2 Parsons on Con., 12, note (o), 15, notes (x) and (y); *Brown v. Slater*, 16 Conn., 192; *Broom v. Batchelor*, 1 H. & N., 255; *Wallis v. Wallis*, 4 Mass., 135; *Jackson v. Blodget*, 16 Johns., 172; *Rogers v. Eagle Fire Ins. Co.*, 9 Wend., 611; *Bryan v. Bradley*, 16 Conn., 474; *Russell v. Coffin*, 18 Pick., 151. 4. Even if it is to be considered a contract for the sale of lands, the plaintiff is entitled to a specific performance, 1st. Because defendants did not plead the statute of frauds. 2d. Because the evidence shows a partial performance, by plaintiff. 2 Story's Eq. Jur., §§ 759, 761, 762, and notes. *Ryan v. Dox*, 34 N. Y., 307, 319; *Bennett v. Abrams*, 47 Barb., 619; *Wetmore v. White*, 2 Caines' Cases, 87; *Parkhurst v. Van Cortland*, 14 Johns., 15; *Stoddard v. Hart*, 23 N. Y., 560; *Ormond v. Anderson*, 2 Ball & B., 369.

DIXON, C. J. A. owns lands, to be offered for sale at pub-

lic auction, and in payment for which he is willing or obliged to receive certain land scrip issued by himself or some former owner of the land. B. is the owner of such land scrip, or a portion of it, which he desires to sell, and C. is a person wishing to purchase the lands or some of them at the sale. C. has been at some trouble and expense to examine the lands and prepare lists or descriptions of such as he deems most valuable and wishes to buy. B. and C. both attend the auction sale, the former in order to sell his scrip, the latter to become purchaser of the lands. C. has no money to pay for the lands or the scrip, and applies to .B. to sell him the scrip on a credit of one year, B. to take title of the lands at the sale and hold them in security for the payment of the price of the scrip and interest. B. accepts the proposition of C., and it is thereupon agreed between them that C. shall attend the sale and bid off the lands in the name of B. as purchaser ; and C. does so, and the lands are conveyed to B. in pursuance of the bids so made. B. pays the purchase money or price by delivery of the scrip *to the vendor of the lands.* No writings passed between B. and C., but the whole transaction as between them was *verbal* merely. The price of the scrip was more than fifty dollars, and no part of the same was delivered, or claimed to have been, by B. to C. C. paid no part of the purchase money of the scrip, nor did he pay or advance anything towards the lands. Such is the most favorable statement of this case for the plaintiff, and the first question arising upon it is, whether there was any valid sale of the scrip to the plaintiff by the defendant *Clark.*

The provisions of the statute of frauds touching contracts of this nature are familiar. " Every contract for the sale of any goods, chattels, or things in action, for the price of fifty dollars or more, shall be void, unless, 1. A note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged therewith ; or, 2. Unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in action ; or, 3. Unless the buyer

Smith vs. Bouck and another.

shall, at the time, pay some part of the purchase money." R. S., ch. 107, sec. 3 ; 2 Tay. Stats., 1256, § 3.

No question arises under the first clause of the statute, since nothing in the form of a note or memorandum in writing was made or attempted to be.

Nor was any part of the *purchase money* of the scrip *paid at the time*, so as to secure the validity of the contract by compliance with the third clause. The construction of this clause has always been, that no mere agreement to pay money, without actual payment or giving credit by some manual act, is sufficient to satisfy it. Something must pass between the parties besides mere words, some overt, symbolical act, like the payment of earnest-money, or the giving of a receipt or credit in writing for such payment, where the same consists in the release or extinguishment in whole or in part of a debt previously due from the seller to the buyer. It is not suggested even that the services of the plaintiff or of his agent, or the expenses incurred in examining the lands and ascertaining their quality and value, can be looked upon as taking the contract out of the statute under this clause. It is very clear they cannot so operate. The services were rendered and expenses incurred by the plaintiff in his own behalf and for his own benefit, sometime before the alleged contract for the purchase of the scrip was entered into, and without any reference to that contract, and, as it would seem, before it was known to the plaintiff or his agent that the defendant *Clark* had the scrip for sale. . It is obvious that no such consideration, however valuable, can be accepted in law in substitution for the payment of *some part of the purchase money at the time*, required by the statute, or as equivalent to such payment. It was a *past consideration* in any view, and the information acquired and given to the holder of the scrip respecting the lands, though it may have been valuable, was not a payment of any part of the purchase money for the scrip, within the meaning and intent of the statute. Nothing passed between the parties but mere

words. See *Harman v. Reeve*, 37 Eng. Law & Eq. R., 302, and *Brown v. Slauson*, 23 Wis., 244, 249.

We come, therefore, to consider the contract with respect to the second clause of the statute, or whether the sale was taken out of its operation by reason of a compliance with the requirements of that clause. It is earnestly contended that it was, and that the delivery of the scrip by the holder to the vendor of the lands in payment for the lands, was a delivery of it to the plaintiff and an acceptance of it by him, within the meaning of the provision now under consideration.

It is not to be questioned that the acceptance and receipt thus required by the statute may be by the agent of the buyer empowered for that purpose. But an examination of the authorities will show that it sometimes becomes a very nice and difficult question for the courts to determine when such an agency has been established, or how it may be sufficiently and properly proved, consistently with the due effect and operation of the statute. It has been said by a very able judge, that the designation of the agent by the buyer, being part of the contract itself, cannot be established by oral proof. *Norman v. Phillips*, 14 M. & W., 277. In that case it was held, that acceptance of the goods by the carrier pointed out by the buyer, was not sufficient evidence for the jury of an acceptance within this statute. In support of the rule to show cause why the verdict should not be set aside and a nonsuit entered, Talfourd, Serj't, said: "The fallacy of the argument is in treating this verbal contract as if it were a valid contract in writing, and proving this to be an acceptance by the aid of it; whereas in truth it amounts to nothing, and was not admissible in evidence for any purpose." And ALDERSON, B., interrupting the argument, remarked: "When you introduce the fact that the goods were to be sent to a particular carrier, you introduce a part of the contract which the statute says shall not be evidence unless it is in writing."

The proposition here is, *to raise up and establish an agency by*

*oral proof*, which agency, thus established, shall have the effect of changing the character of the transaction altogether, and of making it the reverse of what on its face and according to all the acts of the parties it otherwise appears to have been. What, otherwise, and according to the acts of the parties and facts transpiring as evidenced by every surrounding circumstance, was a delivery by the purchaser of the lands to the vendor of them in payment of the price, is to be transformed into a delivery for another and a clearly distinct and contradictory purpose; and the characters of the parties themselves to the transaction, or the capacities in which they acted, are to be wholly subverted, and they made to assume entirely new and inconsistent relations, by the oral proof. The purchaser of the lands is no longer to appear as such, but only as the seller of the scrip to a third party; and the vendor, instead of having accepted and received the scrip as vendor in payment for his lands, is likewise to be understood as having accepted and received it as agent for the third party, who claims to have previously bargained by parol for it. By all these transformations and changes, produced and established by oral evidence, an acceptance of the scrip by the buyer is claimed to have been shown, and thus the contract taken out of the operation of the statute. It is obvious to this court that the requirements of the statute cannot be evaded in this way, and that it would be better that it should be repealed altogether than that it should receive such a construction. With such construction, it would be possible by the introduction of oral evidence, the very admission of which the statute was designed to prevent, to convert every purchase of real estate by conveyance absolute on its face, into a trust, or a mortgage, or other defeasible title or interest, at the instance of any party claiming to have bargained with the purchaser for the property, goods or chattels, or things in action, given in exchange for the land, or to have borrowed from the purchaser the consideration money paid by him. Oral evidence of the bargain or the borrowing being received, and

it being in like manner shown that the claimant was desirous of purchasing the land, the vendor of the land would at once be converted into the agent of the claimant for the purpose of accepting and receiving the property bargained for or the money borrowed. However agency may be created or shown in other cases for the purpose of proving an acceptance by the buyer, we are confident it cannot be thus created or shown in a case like this. It involves too many and too gross and palpable contradictions of actual facts and circumstances to be allowed. It involves not only such contradictions of facts and circum- stances, not evidenced by writing but admitted by the party making the claim, but also the contradiction of the writ- ten evidences themselves, made and executed at the time. It exposes the party assailed to the very hazards, and all of them, which it was the object of the statute to prevent and protect him against, by forbidding the introduction of parol evidence. The claim asserted rests wholly in parol — mere words spoken, — and without the aid of these, which were inadmissible and amount to nothing for any purpose, there is not a scintilla of evidence going to show an acceptance of the scrip, or to be con- sidered upon that question. The written memorandum re- quired by the statute, and deemed so important by the legisla- ture to guard against the effects which may be produced by fraud and perjury, can only be dispensed with where by mutual consent there has been a part performance. Such part per- formance consists in the doing of some positive overt act, as payment at the time by the buyer of any sum in earnest to bind the bargain or in part payment, or as (being the corresponding act on the part of the seller) the delivery by the seller to the buyer of a part of the goods sold, if the buyer shall accept such part and actually receive the same. The statute evidently contemplates the performance of these acts by and between the parties themselves to the contract, or, if an agency intervenes, that the same shall be created or the agent appointed in some manner or by some means independent of the mere verbal

bargain which the statute declares shall be void. The agency to accept and receive cannot, by implication as it were, or by subsequent ratification or adoption on the part of the buyer alone, spring up out of the void verbal agreement, so as to save that agreement or give it any validity or effect; but such agency, to be valid and sufficient for the purpose, must have been created, or the agent designated, by some separate and distinct act or appointment of the buyer. The cases holding that a delivery of goods by the seller to a carrier or wharfinger named by the buyer, and according to the buyer's directions, is not a delivery to the buyer, nor an acceptance or receipt of the goods by him, which will satisfy the statute, have some bearing upon this question. *Hunt v. Hecht,* 8 Ex. (W., H. & G.), 814; *Rogers v. Phillips,* 40 N. Y., 519, 526, 527, 531, 532, and authorities cited.

It is not shown in this case, nor anywhere suggested, that there existed any previous or contemporaneous agreement or understanding whatever between the buyer or bargainor for the scrip and the vendor of the lands, that the latter should act for the bargainor in receiving the scrip or become his agent for the purpose of accepting the same. Without such agency, thus or similarly constituted, it is very apparent that the vendor of the lands was not the agent of the bargainor for the scrip, to accept and receive the same for the bargainor, so as to take the bargain out of the statute, or dispense with the memorandum in writing required by the statute. Without such agency, so shown or established, there was no acceptance and receipt of the scrip either by or for the bargainor, and consequently no sale of it to him by the holder and owner, either before or at the time such holder and owner became the purchaser of the lands. If, instead of this proceeding to compel a conveyance of the lands or to redeem as from a mortgage, suit had been brought by the purchaser of the lands against the bargainor for the scrip, to recover the price, it is obvious that such suit must have failed. The purchaser could not have shown an ac-

ceptance and receipt of the scrip by the bargainor for it, by showing that he, the purchaser, delivered it to the vendor of the lands in payment for the same sold and conveyed to himself. There must be mutuality of rights and remedies between the parties; and if the owner of the scrip could not have recovered from the person who bargained for it, then the latter can have no remedy against the owner.

There is perhaps one other circumstance connected with the case which may possibly be thought to have some influence upon it, and which, therefore, ought to be noticed. It is the fact, undisputed, that the agent of the plaintiff attended the sale and bid off the lands in the name of the defendant *Clark*, who became the purchaser. This may be looked upon as an important fact, showing or tending to show that the plaintiff had or claimed some interest in the purchases, or the lands the titles of which were thus acquired, and that the purchaser knew of and recognized such interest or claim. However significant this fact might be under some circumstances, it cannot suffice here to dispense with the written memorandum required by the statute of frauds. The agent of the plaintiff appeared on that occasion *as the agent of the purchaser of the lands*, and to give any weight to the circumstance of his being there as the agent of the plaintiff involves a flat contradiction and denial of his agency for the purchaser, which agency is also clearly established.

There is a class of cases which have arisen under the clause of the statute we have last been considering, which indeed seem to have gone very far towards establishing that there need be no *actual* receipt or manual taking or holding possession of the goods, chattels, things in action, or any part of them, by the buyer, in order to constitute a valid delivery and acceptance within the meaning of the statute. I refer to that class of cases where the buyer, in the presence of the seller and with the goods actually before him, clearly signifies his willingness and intention to accept and receive them, and does

Smith vs. Bouck and another.

do so, and then immediately constitutes the seller his bailee to hold the goods for him until some future time or for some particular purpose, to which the seller gives his assent, and thereupon agrees and promises to keep the goods accordingly, and to become such bailee. It has been held that there is nothing in the statute that prevents the buyer and seller from forming this new relation. It was so held by this court in *Janvrin v. Maxwell*, 23 Wis., 51, on the authority of several English cases there cited. See also *Marvin v. Wallace*, 37 Eng. Law & Eq., 6.

But it will be observed that the present case lacks what those cases possessed, namely the express *agreement* of the parties, clearly proven, constituting the new relation. There was no express agreement, nor in truth any agreement at all, on the part of the vendor of the lands, to be or become the agent of the buyer to accept and receive the scrip. Neither was there any such agreement between buyer and seller showing that they intended title should pass at once and absolutely, and that henceforth the seller should be and remain the mere bailee of the buyer. The facts are such as to repel the supposition of any intention of the kind on the part of either buyer or seller.

The decisions referred to undoubtedly seem to go very far, and while we think they are strictly correct on principle, we are yet of opinion that great caution should be exercised where application is sought to be made to new cases. The safeguards of the statute are not to be frittered away and lost by loose and latitudinary construction.

Another question elaborately argued in this case is, whether, supposing the title of the scrip to have passed by the verbal bargain, and that the plaintiff became the owner, the deed of the lands, absolute on its face, could be shown to have been a mortgage by oral proof. The particular question thus discussed is, whether the deed, thus to be converted into a mortgage, must be one directly from the alleged mortgagor to the mortgagee, or whether the rule allowing such evidence to be

received extends also to a deed executed by a third person to the alleged mortgagee. The evidence was held admissible by this court in a case of the latter kind, in *Sweet v. Mitchell*, 15 Wis., 641, 664, 665. It should be remarked of that case, however, that the relation of debtor and creditor as between the alleged mortgagee and the mortgagor, and growing out of the transaction claimed to have been a mortgage, was established by other than mere parol evidence. A promissory note had been given by the the mortgagor to the mortgagee for the loan made by the latter to the former, with which to buy and pay for the land. The rule permitting oral evidence to be received in such cases is exceptional, and certainly a very dangerous one, and the true policy of the law, no doubt, is not to extend it beyond existing precedents. Whether the relation of mortgagor and mortgagee, in a case like this, can be shown by evidence *wholly verbal*, is a point which we are now happily relieved from the necessity of deciding.

It follows from the views above expressed, that the judgment of the court below must be reversed, and the cause remanded with direction that it be dismissed.

*By the Court.*— It is so ordered.

A motion for a rehearing was denied at the June term, 1873.