FRIEDMAN and another, Appellants, vs. PLOUS and another, Respondents.

*October 6—October 27, 1914.*

*Sales: Oral contract: Validity: Statute of frauds: Acceptance and receipt of goods: Agency: Evidence.*

1. Under sec. 2308 and under sec. 1684t—4, Stats., if there is no written note or memorandum and no payment of any part of the price, a contract for the sale of goods of the value of $50 or more is not valid or enforceable unless the vendee both accepts and receives a part of the goods.
2. Acceptance and receipt in such a case include a delivery by the vendor. They must be intentional, and mere words are not sufficient to establish delivery and receipt.

3. Acceptance and receipt by an agent for the vendee must be by
   . one having authority to accept and receive conferred upon
   him by the vendee; and where it is claimed that one of two
   vendors became the agent of the vendee for that purpose, the·
   proof should be clear.
4. The evidence in this case is *held* insufficient to support a find--
   ing by the jury that there was an acceptance and receipt of
   the goods sold. under an oral contract, or to show that one of
   the vendors had been made an agent of the vendees for that..
   purpose.

APPEAL from a judgment of the circuit court for Racine·
county: E. B. BELDEN, Circuit Judge.   *Affirmed.*

*Wallace Ingalls,* for the appellants.

For the respondents there was a brief by *S. L. Emmett,.*
attorney, and *E. B. Hand,* of counsel, and oral argument by·
*Mr. Hand.*

TIMLIN, J.    The plaintiffs, *Max Friedman* and *Ludwig·
Exel,* copartners, sought to recover from the defendants, *Mor--
ris Plous* and *Louis Plous,* copartners, damages for breach
of contract of sale by the plaintiff firm to the defendant.
firm for $800 of a leasehold interest, machinery, tools, equip-
ment, appliances, material, bills receivable, accounts outstand--
ing, work in process of completion, names and addresses·
of customers, and all other property of every kind and de--
scription located at a designated place in Racine, together·
with a truck automobile.    By special verdict the jury found
(1) that an agreement was concluded between the parties for--
the sale and purchase of the property in question; (2) that
the defendant *Louis Plous* did authorize the purchase of the·
property in question in behalf of the defendant firm;
(3) that the defendants actually accepted the property which
was the subject of the negotiations in question, or some part·
thereof, in performance of the alleged contract; (4) that the·
defendants actually received the property which was the sub-
ject of the negotiations in question, or some part thereof, in.

performance of the alleged contract. There was no payment of any part of the purchase money and no finding of damages, and there was no request to submit the question of damages to the jury. The court set aside as without support in the evidence the second, third, and fourth findings of the jury and substituted contrary findings.

The principal complaint made on this appeal is with reference to this ruling of the court, the appellants contending that a case was made for the jury, respondents *contra*. It appeared that *Max Friedman* and *Ludwig Exel* were copartners engaged in the business of cleaning and dyeing clothes. The latter had been formerly employed by the defendant firm as an expert man and *Friedman* had $500. *Exel* quit the employment of the defendant and he and *Friedman* established a business at Racine June 2, 1913, and continued until July 31, 1913, when they quarreled, and *Friedman* brought suit against *Exel* and obtained an injunction prohibiting the latter from disposing of the firm property or collecting its moneys, etc. August 14, 1913, the alleged sale to the defendant firm was made.

All parties agree that *Morris Plous* and the plaintiffs engaged in negotiations for the purchase and sale of the property mentioned by the defendant partnership from the plaintiff partnership, the buyer to pay therefor $800 and assume certain liabilities of the plaintiff partnership. The question is whether the sale was so far consummated as to satisfy the statute of frauds relative to sales of personal property.

We have at present in this state two statutes of fraud relative to the sale of goods or chattels of more than $50 in value. One of them, long in force and which has received judicial interpretation, is sec. 2308, Stats. It is contended by appellants that there was evidence of an acceptance and delivery under the second subdivision of that section. This subdivision in effect declares that such sale shall be void unless in the absence of writing or payment of some part of the pur-

chase money the buyer shall "accept and receive part of such goods or the evidences or some of them of such things in action." Under this statute it has been held that there must be both acceptance and receipt and that mere words will not satisfy both. *J. H. Silkman L. Co. v. Hunholz*, 132 Wis. 610, 112 N. W. 1081; *Smith v. Bouck*, 33 Wis. 19. The other statute is found in the Uniform Sales Act and is sec. 1684*t*—4, and it provides that *such contract shall not be enforceable by action* unless the buyer "shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same." Sub. 3 of the section last referred to provides that "there is an acceptance of goods within the meaning of this section when the buyer, either before or after the delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

We will make no attempt to point out in this case all the differences between these two statutes relating to the same subject. Many of such differences cannot be foreseen, but must be brought up by cases as they arise. The statute last referred to seems to separate acceptance from receipt and provide that the former requirement may be satisfied by words or conduct, while the latter presupposes a delivery by the seller and requires some intentional act of receipt on the part of the purchaser. As applied to the instant case the effect of these statutes is the same.

Acceptance and receipt includes a delivery by the vendor. There could be no receipt and acceptance on the part of the vendee unless the vendor delivered the goods. The acceptance and receipt must be intentional, and mere words are not sufficient to establish delivery and receipt. Acceptance and receipt may be made by an agent of the vendee within the scope of his authority. 1 Mechem, Sales, § 363. But it must be by an agent having authority to accept and receive conferred on him by the vendee; or by a general agent of the vendee having all authority. Id. and § 1173, and *Smith v.*

*Bouck,* 33 Wis. 19, and *Spear v. Bach,* 82 Wis. 192, 52 N. W. 97. When it is claimed that one of the two vendors became the agent for the vendee for this purpose the proof should be clear. *Smith v. Bouck, supra.* The claim of the appellants is that there was a delivery of the goods by delivering the key by the vendor *Friedman* to the vendor *Exel,* the latter being the agent of the vendee *Plous.* But there is no sufficient proof that *Exel* was the agent of *Plous* for either acceptance or delivery. In order to establish that, evidence was offered tending to show that there was a disagreement between the partners *Friedman* and *Exel,* that *Plous's* firm was running a rival or competitive business, that *Exel* was frequently seen together with *Plous* prior to the alleged purchase, that *Exel* said he would get a man to buy out *Friedman,* and that he had a man in the town who was running automobiles and he would not need the automobile of the vendors. He said this man was *Mr. Plous* of the Union Dye Works. *Mr. Friedman, Mr. Exel,* and *Mr. Plous* met in the office of Mr. Ingalls, who was *Friedman's* attorney. A list of the indebtedness of the vendors was made up by some one and the purchaser was to assume these debts. *Mr. Plous* read this list over and said, "If there will be any more that is not on the list he was not going to take care of it," and Mr. Ingalls said, "Whatever other bills there will be we will take care of that. We want to have it done right here, whatever is to be done. You are buying on this list and no other. If there is any other or further indebtedness *Mr. Plous* isn't to pay it." *Plous* said, "Make out the lease to the Union Dye Works and *Morris* and *Louis Plous,* and that Stern, the guarantor on the old lease of the vendors, would be released." *Exel* asked *Friedman* for the papers he had on the place and the latter said he didn't have them with him, but "as soon as you come down I will give them to you." *Plous* said to *Exel,* "You take just what belongs to the place. You know what is there." Ingalls said, "If there is anything to be done we do

it right now." Papers were delivered to Mr. Simmons, attorney for *Mr. Exel,* with instructions to draw up papers for the transfer, and Simmons took them over to his office. *Mr. Plous* gave Mr. Simmons directions relative to the writings to be made. *Plous* then told *Exel* to take his coat off and go right to work, and the two vendors and the vendee started for the building in which the property in question was situated, each one carrying a letter file or book. *Mr. Plous* had up to this time never seen the property. Arriving there, *Mr. Plous* asked where the work was, and he was shown the order book and he asked some questions about that. *Mr. Plous* said to *Exel,* "All right, you take everything." There was some controversy with reference to how much of the property there found belonged to the vendors or was included in the sale. This occupied about five minutes, and then *Friedman* left the place and *Plous* left the place and went to the telephone to communicate with his brother, the other defendant, who was at Kenosha. *Friedman* returned with the key to the building and *Plous* returned, walking about five steps back of *Friedman.* *Friedman* handed the key to *Exel,* who also had a duplicate key of his own, and *Plous* could have seen him do so. There was no conversation at all. *Plous* testifies he did not see this delivery of the key to *Exel.* Before the return of *Plous, Exel* stepped to the telephone, called his wife, and said to her, "We have got the place." As soon as he returned to the shop where the goods were, *Plous* announced that the sale was off. From this it appears the learned circuit court was right in changing the answers to the questions of the special verdict for lack of evidence to support them and on the ground that there was no evidence to show that *Plous* had made *Exel* his agent to accept and receive the goods or any part thereof in consummation of the oral contract of sale.

*By the Court.*—Judgment affirmed.