## MAHONEY BROTHERS, RESPONDENT, *v.* HANSEN PACK-ING CO., APPELLANT.

(No. 5,130.)

(Submitted April 4, 1923.   Decided April 25, 1923.)

[215 Pac. 506.]

*Contracts—Breach—Statute of Frauds—Principal and Agent—Part Payment—Taking Case Out of Statute—Evidence—Insufficiency.*

Statute of Frauds—Part Payment by Agent—Authority Required.
   1.   When acceptance and receipt of a part of goods or payment of a portion of the purchase price at the time of the sale by an agent of the buyer is relied upon to take the case out of the statute of frauds, it must be by one having specific authority or by a general agent having all authority, and the authority of the former cannot depend upon the same oral agreement which is sought to be rendered valid by the act of the agent.

Same—Part Payment by Third Party not Agent of Buyer—Effect.
   2.   In an action for breach of contract of sale of cattle where defendant company was sought to be held liable under an arrangement made over the telephone by a third person who had never been its agent and was not specifically authorized by it to act for it, and who after completion of the conversation assured the buyer that defendant would take the cattle and thereupon paid a part of the purchase price, defendant never making any payment whatever, *held* that the payment was not made by the buyer and therefore the case was not taken out of the statute of frauds (subd. 3, sec. 7591, Rev. Codes 1921) by such part payment.

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

ACTION by Mahoney Bros., a corporation, against the Hansen Packing Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded, with directions to dismiss.

*Mr. J. H. Toole* and *Messrs. Kremer, Sanders & Kremer,* for Appellant, submitted a brief; *Mr. J. Bruce Kremer* argued the cause orally.

Part payment as satisfying statute of frauds, see note in 125 **Am. St. Rep.** 393.

*Messrs. Mulroney & Mulroney,* for Respondent, submitted a brief; *Mr. Robert E. Mulroney* argued the cause orally.

MR. CHIEF COMMISSIONER FELT prepared the opinion for the court.

This action was brought by the plaintiff corporation to recover damages for breach of an alleged contract to purchase seven carloads of steers. Trial was had to a jury, and the plaintiff recovered judgment on their verdict for the sum of $3,798.13, which judgment was entered on the eighteenth day of February, 1922. The defendant moved for a new trial, which motion was overruled. The appeal is from this judgment.

The facts so far as they are material to a determination of the question presented by the appeal are as follows: The plaintiff corporation was on the thirtieth day of July, 1920, engaged in the business of buying and selling beef cattle in western Montana and in the state of Idaho. On said date it was the owner of about 170 head of steers which were in pasture at Perma, Montana. Upon that date Dan Mahoney, the president of the plaintiff corporation, chanced to meet, at Missoula, one John Schram, who was engaged in the butcher business and also bought and sold cattle. During the course of the conversation, the plaintiff's steers were mentioned. It was suggested by Schram that the Hansen Packing Company of Butte, the defendant in the action, might buy them. Mahoney testified concerning his conversation with Schram as follows: "He knew that I had this bunch of steers, and he says, 'I will call up Mr. Hansen to see if he will buy them.' I said, 'All right.' He said, 'What do you want?' I said, 'I want nine cents at Perma.' And he went in the booth and called up Mr. Hansen, and we didn't have to wait long until he answered. He said, 'Come in the booth with me and hear what he has got to say.' So we went in the closed booth. It was a very small room, and I stood behind him and the phone, and he told Hansen that I would sell the cattle at nine cents at Perma. Mr. Hansen said,

'Give him ten cents, delivered in Butte, weighed off the cars,' and I told Schram that I wouldn't take that, nine cents was the best I would do, at Perma, and Hansen told him to take the cattle, if they were good, and Schram asked me if they were good cattle, and I said, 'They are good beef cattle,' and the deal was made. We went out and wrote out a—he paid me $500—and I wrote out a receipt and give it to him.'' The amount paid by Schram was his personal check paid by his own funds. The receipt given was in the following form:

"Missoula, Mont., July 30, 1920.

"We have this day sold to the Hansen Packing Co. of Butte through his agent John Schram, seven (7) carloads of beef steers at nine (9) cents per pound weighed at Perma straight up from the pastures by noon on the day of delivery. Said cattle to be delivered: (4) four cars loads within ten days from date, and the balance within (30) thirty days from date.

"The receipt of $500.00 five hundred dollars is hereby acknowledged.

"MAHONEY BROS., INC.,
"DAN P. MAHONEY, Pres.''

Immediately before the plaintiff rested, Mahoney was recalled and supplemented his testimony as to the conversation he had overheard in the telephone booth with the following: "Mr. Schram told Mr. Hansen that he could get those cattle from—at Perma. He didn't mention my name at all, but he said for him, Hansen. Hansen answered that by saying after we agreed on the price, by telling him to buy them, to buy them for him, for Hansen.''

At the conclusion of the testimony offered by the plaintiff, the defendant moved for a nonsuit, upon several grounds. It is only necessary for us to mention that based upon the contention that the evidence wholly failed to show a valid agreement on the part of the defendant to buy the property in question.

Section 7591, Revised Codes of 1921, provides:

"No sale of personal property, or agreement to buy or sell it for a price of two hundred dollars or more, is valid, unless:

"1. The agreement or some note or memorandum thereof be in writing, and subscribed by the party to be charged, or by his agent; or,

"2. The buyer accepts and receives part of the thing sold, or when it consists of a thing in action, part of the evidences thereof, or some of them; or,

"3. The buyer, at the time of sale, pays a part of the price."

It is conceded that the value of the property in question was sufficient to come within the provision of this section. It is also conceded that the agreement to buy was not made valid by compliance with either the first or second subdivision of the statute. We must now determine whether the payment made by Schram had the effect of making the agreement valid as to the Hansen Packing Company under the third subdivision.

There is no suggestion that the defendant has ever directly or indirectly, at the time of sale or otherwise, paid any part of the price. Schram paid his own money. There is no pretense that he had specific authority from the defendant to pay $500 or any other sum in its behalf. There is absolutely no shred of testimony in the record, further than that quoted from the testimony of Mahoney, that tends in any degree to enlarge upon the authority of Schram to bind the defendant.

Counsel for respondent contends that sections 7947 and 7949, Revised Codes of 1921, as to the ostensible and necessary authority of agents, clothed Schram with authority to make the payment. In his brief he paraphrases a portion of the opinion in *Case* v. *Kramer,* 34 Mont. 142, 149, 85 Pac. 878, to read as follows: "If Mahoney's testimony touching Schram's conversation with Hansen on July 30, in which Schram was told by Hansen to make the purchase, is to be accepted as true—and for present purposes it must be so accepted—Schram had ostensible authority to negotiate the purchase, and in connection therewith to do everything necessary, proper and usual in

the ordinary course of business for effecting the purpose of his agency." In that case, however, the portion of the opinion paraphrased was discussing the authority of the agent of the seller to accept a check in part payment of the purchase price, when he had been authorized to accept cash. This check was paid upon presentation and was deposited to the credit of the seller. The decision in that case was based upon the fact that the agent of the seller had been specifically authorized to receive a definite part of the purchase price and that the required amount was paid by the buyer. It is no authority for the contention made by the respondent in the present case.

The statutes of frauds and perjuries of all jurisdictions require, in the absence of the note or memorandum, some **[1]** overt act on the part of the parties to the transaction. Our attention has been called to only one adjudicated case where there was any attempt to comply with the requirements of the statute by proving a payment made by the agent of the buyer. In that case the money for that particular purpose was left in the hands of the agent by the buyer. (*Alexander* v. *Oneida County,* 76 Wis. 56, 45 N. W. 21.) When acceptance and receipt of a part of the goods by an agent of the buyer is relied upon to comply with the requirements of the statute, it must be by an agent having specific authority, or by a general agent having all authority. (*Atherton* v. *Newhall,* 123 Mass. 141, 25 Am. Rep. 47; *Calvert* v. *Schultz,* 143 Mich. 441, 106 N. W. 1123; *Friedman* v. *Plous,* 158 Wis. 435, 149 N. W. 218.) The authority of the agent cannot depend upon the same parol agreement which is sought to be rendered valid by the acceptance. (Mechem on Sales, sec. 363.) The transaction cannot rest upon words alone.

As said in *Smith* v. *Bouck,* 33 Wis. 19, at page 30, construing a statute similar to ours: "The statute evidently contemplates the performance of these acts by and between the parties themselves to the contract, or, if an agency intervenes, that the same shall be created or the agent appointed in some manner or by some means independent of the mere verbal bargain

which the statute declares shall be void. * * * Such agency, to be valid and sufficient for the purpose, must have been created, or the agent designated, by some separate and distinct act or appointment of the buyer.''

We are not called upon to decide in this case that the appointment of the agent must be in writing as contended by the appellant. But we do say that something more is required than was shown in this case. Walter Hansen, with whom the telephone conversation was had, by which the plaintiff seeks to establish the liability of defendant, testified that Schram was never his agent or the agent of his company; that he did not authorize Schram to buy the cattle in question, either for himself or for his company, or to pay for them; that he agreed to buy the cattle from Schram at ten cents a pound delivered in Butte, if they were fat. Schram's account of the transaction, although somewhat unsatisfactory, is similar to that of Hansen. We will assume for the sake of argument that he contradicted Hansen and corroborated Mahoney in every detail.

A valid contract involving the subject matter of the one in controversy cannot be established in that manner. Of what purpose would be the statute of frauds, if two persons could fasten liability upon a third through a conversation had over the long-distance telephone merely by having one of the two pose as the agent for the party at the other end of the line? The answer is self-evident. The purpose of the law is to make such a fraud as that would be impossible, and render the perjury necessary to consummate it of no avail. The fact that Schram does not corroborate Mahoney may prove that there was no such fraudulent conspiracy in this case. But it does not add anything to the strength of the plaintiff's case. The fact remains that there is absolutely nothing to establish the contractual relation of the defendant except the mere words of Hansen.

The court overruled the motion for nonsuit; likewise a motion for directed verdict, at the conclusion of all of the testi-

mony. Each ruling was erroneous. Since no useful purpose could be served by a new trial in this case, it will not be necessary to refer to any of the other assignments of error.

We recommend that the judgment be reversed, and the cause remanded to the district court, with directions to enter judgment dismissing the action.

PER CURIAM: For the reasons given in the foregoing opinion the judgment appealed from is reversed and the cause is remanded to the district court, with directions to dismiss the action.

*Reversed.*

Rehearing denied May 15, 1923.