LEONARD v. ROTH.

1. SALES—PAYMENT—STATUTE OF FRAUDS.
    The deposit of money to be paid over to the owner of stock after he should establish his title thereto by pending litigation, whereupon the shares should belong to the party making such deposit, interest to be payable, and the amount paid over to be returned at his option after six months, unless the title to the stock was first determined, did not constitute a sufficient payment to take the contract out of the statute of frauds.

2. SAME—STATUTE OF FRAUDS—PERSONAL PROPERTY.
    The payment required by the statute of frauds is an unconditional transfer of money or property, from vendee to vendor, and unconditional acceptance of the same by the vendor, in discharge, *pro tanto*, of the purchase price.

3. SAME—STATUTE OF FRAUDS—FRAUDULENT CONVEYANCE—MEM-
ORANDUM.

   A written receipt for the deposit so made, merely stating that
      it was received for the purchase of the stock, was an insuf-
      ficient. memorandum to take the transaction out of the
      statute.

4. SAME—DEFENSE BY THIRD PARTY.

   It is competent for a third party, who has purchased the subject-
      matter of the invalid sale, to interpose the invalidity of the
      transfer in defense of his subsequently acquired interest.

Appeal from Wayne; Rohnert, J. Submitted January
11, 1911. (Docket No. 68.) Decided March 13, 1911.

Bill by Asbury O. Leonard against Charles Roth and the
Ditzler Color Company, to compel the retransfer of stock
pledged to defendant Roth, upon a tender of the amount
of the secured indebtedness. Louis J. Goux, claiming
rights in the stock under a parol contract, intervened by
petition and was substituted in place of complainant.
From a decree for intervener, defendant Roth appeals.
Reversed.

*Corliss, Leete & Joslyn* (*Thomas T. Leete*, of coun-
sel), for intervening petitioner, Goux.

*Bumps & Bishop* (*Hunt & Altland*, of counsel), for
defendant Roth.

BLAIR, J. Complainant, in pursuance of, and to enable
him to carry out, an oral agreement with the intervening
petitioner, filed this bill of complaint to compel the retrans-
fer to him of 50 shares of stock of the Ditzler Color Com-
pany pledged to defendant Roth as security for the pay-
ment of complainant's note.

Complainant did not prosecute his suit in good faith,
and Mr. Goux was permitted to intervene and assume the
prosecution. The agreement is stated in the intervening
petition as follows:

"That on or about October 14, 1905, petitioner was

asked by the complainant, Asbury O. Leonard, to buy from said complainant 40 additional shares of the stock of said defendant corporation claimed by said complainant to be owned by him and the title to which 40 shares of stock, and of certain 10 additional shares included in certificate No. 17 of said corporation, was in dispute between the said complainant and the defendant Roth. That said complainant represented to your petitioner that he was about to commence proceedings against the defendant Roth for the purpose of determining said dispute as to the title of said stock and that he needed certain moneys in order to enable him to make tender to said defendant Roth of the amount of the indebtedness of said Leonard to said Roth, for which said 50 shares of stock was held as collateral. That thereupon your petitioner agreed to and did buy from said complainant, Leonard, the said 40 shares included in said certificate No. 17 of the stock of said defendant corporation for the sum of $600, and the said complainant, Leonard, did agree to deliver said stock to your petitioner at once upon his title thereto being perfected, and as soon as he should obtain the said stock from the defendant Charles Roth.

"(2) Petitioner further shows that, in pursuance of said agreement with said complainant Leonard, and to enable said Leonard to make tender as aforesaid, your petitioner did, on the 14th day of October, 1905, pay to Lodge, Trevor & Brown, solicitors for said complainant, Asbury O. Leonard, the sum of $600, being the purchase price of said 40 shares of stock so agreed to be sold to him by said Leonard as aforesaid, and did receive from said Lodge, Trevor & Brown, solicitors mentioned, a written receipt for said money, as follows:

"'DETROIT, October 14, 1905.

"'Received of Louis J. Goux, six hundred dollars for the purchase of forty shares Ditzler Color Company stock.

"'LODGE, TREVOR & BROWN.'

"* * * That a good and sufficient legal tender was made to redeem said stock from said loan.

"(3) That thereafter, to wit, on or about the 20th day of December, 1905, your petitioner caused inquiry to be made as to the progress of the suit brought by said complainant to determine the title of said stock, and ascertained that no progress had been made in said suit, and thereupon petitioner became uneasy about the matter, and

particularly as to the uncertainty and indefinite terms of the written receipt received by him for the money so deposited as aforesaid, in that no time was fixed for the determination of the title of said stock, and thereupon your petitioner demanded that said money be returned to petitioner to be held by petitioner to await a decision as to the said litigation, or that the said moneys be placed on deposit for such purpose, and demanded that the time be limited within which title of said stock must be determined, after the expiration of which petitioner should have the right, if he saw fit so to do, to cancel said agreement to buy said stock. That thereupon, to wit, on or about the 21st day of December, 1905, a further agreement was entered into by your petitioner and the said complainant Leonard by the terms of which said $600 paid to said Lodge, Trevor & Brown, solicitors as aforesaid, was deposited in the McClellan & Anderson Savings Bank, Detroit, and a certificate of deposit therefor issued to Frank T. Lodge, one of the solicitors for complainant, and it was thereupon agreed between your petitioner and said complainant Leonard and his said solicitors that said money should so remain on deposit in said bank for the payment of the purchase price of said stock so sold to him by said complainant Leonard, and for the purpose of enabling said Leonard to keep his tender good to said defendant Roth in this cause, and that your petitioner should have the right, if he should so elect, at the expiration of six months from said December 21st, to receive a return of his moneys with interest thereon in case the title to said stock had not been determined by that time."

Mr. Goux testified, among other things, as follows:

"He said he would have to prove his title, and, if the litigation was unsuccessful in getting his title, the money was to be returned to me. This was in October, 1905. After that I felt uneasy about the money, and I told Mr. Lodge I thought the money was just as available in my hands as it was in his; that I did not feel comfortable about simply turning the money over to him without any other security. * * * As far as I know, Mr. Leonard has no financial responsibility. * * * When I spoke of the six months, I meant that it was so placed that they could not keep my money indefinitely, that is all, to have the time so fixed. It was fixed by Mr. Lodge.

"*Q.* For what; that he would get the stock in that time?

"*A.* That was to be definite; that at the end of the time I should have my money. So they could not keep it 16 years. * * * There was no six months' arrangement with me; no time limit. The $600 was to be left at the bank no definite length of time. I think the fact that it was a certificate of deposit made it optional with me. The arrangement was made with the United States Savings Bank by Mr. Lodge. * * * Mr. Leonard was present when the money was paid to his attorney. * * *

"*Q.* Why didn't you pay it to Mr. Leonard?

"*A.* I offered to pay it to Mr. Leonard if he would give me security for it.

"*Q.* Why did you want security for your $600?

"*A.* Because I did not want to turn over $600 to some one that I did not know was responsible for it. * * *

"*Q.* Did you want it under your control?

"*A.* I wanted to be sure that it was safe.

"*Q.* In other words, you did not want Mr. Leonard to get possession of the $600?

"*A.* No, sir. * * *

"*Q.* He did not guarantee that he would get it?

"*A.* He said he would give it to me when he proved his title to it. * * * At the time the $600 was put up, on October 14th, there was no time limit as to when the stock should be obtained—it remained indefinite. I was to receive interest on the $600 at the rate of 6 per cent. Mr. Leonard was to pay interest to me on the $600 in the hands of Mr. Lodge, as long as it remained in his hands. It was agreed when it was turned back to me the interest was to cease. * * *

"*Q.* Do you claim that Exhibit A embodies all the terms of the agreement between you and Mr. Leonard?

"*A.* I claim that this $600 was to pay for the 40 shares of stock. * * * I don't see how I can answer it except as I have already answered it, that I bought 40 shares of stock, and this receipt is for the money I paid for the 40 shares of stock."

Mr. Goux also wrote the following letters:

"December 9, 1905.

" Mr. Lodge.

"*Dear Sir:* I must have your check for amount due me this morning, and will send my office girl for same at

eleven o'clock. Any time that stock is secured, will take
at price mentioned, providing same is secured within four
months. After that date will have to open new negotia-
tions.

"Yours,

"L. G. Goux, M. D."

"December 15th, 1905.

"Mr. FRANK T. LODGE.

"*Dear Sir:* Will you kindly deliver to bearer check
for the six hundred dollars. Since Mr. Leonard's return
I have been informed by him that the amount would be
paid. No satisfactory reason for not returning the money
has been furnished me up to the present time, and I feel
that I have granted you a reasonable length of time to
make settlement.

"The fear that the money will not be available in case
the stock is secured has no foundation in fact, for Mr.
Leonard knows that more than par can be secured for the
stock at any time. I cannot wait indefinitely for a settle-
ment of this matter. Kindly oblige me at once.

"Respectfully yours,

"Louis J. Goux."

The court entered a decree for the intervener upon the
principal ground that the delivery of the $600 was a pay-
ment for the stock, which saved the oral agreement from
being invalid under the statute of frauds. From this de-
cree defendants appeal to this court.

We deem it conclusively established by the testimony
that neither the intervener nor any one else understood
that the $600 was turned over to Mr. Lodge as a payment
in advance for the stock. On the contrary, we are satis-
fied from the testimony of intervener, that the agreement,
so far as the money was concerned, was in substance that
Mr. Lodge should pay over the money only upon the de-
livery of the stock. It is quite improbable that Mr. Goux,
knowing that there was a dispute as to the right to the
stock and that litigation would be necessary to determine
such right, would part with the money unconditionally.
His conduct is inconsistent with such a theory. He re-
fused to turn the money over to Leonard unless he fur-

nished security. He required that interest upon the money should be paid pending the delivery of the stock. He twice demanded that the money be returned to him, and finally insisted that Mr. Lodge deposit the money in bank and take a certificate of deposit under an agreement, as stated in his petition, that the money should remain on deposit for the payment of the purchase price of said stock, and to keep the tender good, and with the right at his option to receive his money back at the expiration of six months from December 21st.

We do not regard the transaction with reference to the $600 as establishing a payment within the meaning of the statute of frauds. The payment required by the statute is the usual payment, as the term is commonly understood, whereby the vendee unconditionally transfers money or property to the vendor which the vendor unconditionally accepts in discharge, *pro tanto*, of the purchase price. *Driggs* v. *Bush*, 152 Mich. 53 (115 N. W. 985, 15 L. R. A. [N. S.] 654, 125 Am. St. Rep. 389); *Gorman* v. *Brossard*, 120 Mich. 611 (79 N. W. 903); *Godkin* v. *Weber*, 154 Mich. 207 (114 N. W. 924, 117 N. W. 628, 20 L. R. A. [N. S.] 498); *Dow* v. *Worthen*, 37 Vt. 108; *Hinchman* v. *Lincoln*, 124 U. S. 38 (8 Sup. Ct. 369); *Thompson* v. *Kellogg*, 23 Mo. 281; *Groomer* v. *McMillan*, 143 Mo. App. 612 (128 S. W. 285); Tiedeman on Sales, § 69; Baker on Sales, §§ 247, 272, 286, 287, 388; 20 Cyc. p. 252. The testimony of intervener clearly demonstrates that the receipt was not a sufficient memorandum to take the case out of the statute. *McCaskey Register Co.* v *Truettner*, 149 Mich. 241 (112 N. W. 909).

It is further suggested:

"That Mr. Roth is not in a position to raise this question as to the validity of the contract between Leonard and Goux. It is none of Mr. Roth's business whether the contract was valid or not. Mr. Leonard treated the contract as binding upon him, used the money to make a tender for his own purposes, then refused to return the money, and deposited it in a bank subject solely to the control of his own attorney. Mr. Leonard ratified the contract in

every way by his conduct, and is estopped now from denying its validity. Leonard, in fact, is not in court denying the contract; but a third person, a stranger to the transaction, seeks to take advantage of an alleged infirmity in the contract. We submit that Roth has no such right, even were his position sound, which we emphatically deny."

The essence of this contention is that the owner of property cannot convey title thereto because of a previous invalid agreement. We are unable to find any support for this contention either in the canons of logic or authority. Browne on Statute of Frauds (5th Ed.) § 135c; 29 Am. & Eng. Enc. Law, p. 809 (3) b; *Waite* v. *McKelvy*, 71 Minn. 167 (73 N. W. 727).

It results that the decree must be reversed, and the bill be dismissed.

MOORE, McALVAY, BROOKE, and STONE, JJ., concurred.