CHARLES R. ABLETT COMPANY, Plaintiff, *v.* PHILIP SENCER, Defendant.

City Court of New York, New York County, August —, 1927.

Frauds, Statute of — action on check given for purchase price of goods — payment on check was stopped — check constituted payment within Statute of Frauds (Pers. Prop. Law, § 85).

A check given by a purchaser of goods for the full amount of the purchase price for which a receipted bill was given, although subsequently dishonored through a stop payment order, satisfies that part of the Statute of Frauds (Pers. Prop. Law, § 85) which makes a contract valid if the goods alleged to have been sold are paid for in whole or in part.

ACTION on check given for purchase price of electric bulbs.

*Laurence J. Bershad,* for the plaintiff.

*Hyman Brodsky,* for the defendant.

SHIENTAG, J. Plaintiff and defendant entered into an agreement on April 12, 1927, for the sale of a certain quantity of electric bulbs for the sum of $550. The defendant gave the plaintiff his check on the same day for the full amount of the purchase price and obtained from the plaintiff a receipted bill for the merchandise in question. Subsequently the defendant, the drawer, stopped payment on the check. The plaintiff brings suit on the check, and the only defense with which we are here concerned is that of the Statute of Frauds. There was no acceptance and actual receipt of any part of the goods by the defendant. The plaintiff having made no point of it, I shall assume for the purpose of this motion that there was no memorandum in writing by the party sought to be held on the contract. The plaintiff contends that the defendant's check, although subsequently dishonored, constituted a payment of the purchase price within the meaning of the statute, thus dispensing with the necessity of a writing. This year marks the 250th anniversary of the enactment of the Statute of Frauds in England, section 17 of which, in substantially its original form, is in force in this State to-day (Pers. Prop. Law, § 85, subd. 1). Considering the nature and age of the statute it is not surprising that there has been such a wide difference of opinion among jurists and legal scholars concerning its usefulness and efficacy. These range

from the diatribes against the statute by Mr. Justice STEPHEN and Sir FREDERICK POLLOCK in the first issue of the Law Quarterly Review on the one hand to the encomiums heaped upon it by Lord KENYON and Lord ELLENBOROUGH on the other (1 Law Q. Rev. 1; 43 id. 1; *Chater* v. *Beckett,* [1797] 7 T. R. 201; *Chaplin* v. *Rogers,* [1801] 1 East, 192.) In between there is the comment of a careful student of English law, who says more particularly with reference to the section dealing with the sale of goods: " The prevailing feeling both in the legal and the commercial world is and has for a long time been that these clauses have outlived their usefulness and are quite out of place amid the changed legal and commercial conditions of to-day." (6 Holdsworth, History of English Law, 396 *et seq.*) With the wisdom of legislation, as such, courts can have no concern. It is important, however, in construing the statute in the light of modern conditions, to consider some of the reasons which led to its enactment. The original Statute of Frauds was stated to have been passed " for the prevention of many fraudulent practices which are commonly endeavored to be upheld by perjury and subornation of perjury." Holdsworth points out that in 1677, when the statute went into effect, trial by jury was still in the stage where a jury might decide a case upon its own knowledge of the facts. Furthermore, under the then existing rules of evidence " neither of the parties to an action, nor their husbands or wives, nor any person who had any interest in the result of the litigation, were competent witnesses." (6 Holdsworth, 388.) A man sued on an oral contract, not being permitted to testify himself, was practically helpless in the face of any attempted perjury. The intention of the statute obviously was, as summed up by the EARL OF HALSBURY, L. C., in *Norton* v. *Davison* (L. R. [1899] Q. B. 401), " that mere words of mouth should not be sufficient to establish a contract for the sale of goods exceeding the prescribed value, but that something besides should be necessary for that purpose." (P. 404.) So the statute in the original form provided in substance that no contract for the sale of goods of the value of ten pounds sterling or upwards should be allowed to be good unless some note or memorandum in writing of the bargain be made and signed by the parties to be charged therewith (in New York the party to be charged) or their duly authorized agents. The requirement of a writing was dispensed with if certain acts were performed, viz., (1) if the buyer shall accept and actually receive a part of the goods sold; or (2) if the buyer shall give something in earnest to bind the bargain or in part payment. On this motion I am concerned solely with the second exception. " The giving of earnest, and the part pay-

27

ment of the price, are two facts independent of the bargain, capable of proof by parol, and the framers of the Statute of Frauds said in effect that either of them, if proven in addition to parol proof of the contract itself, is a sufficient safeguard against fraud and perjury to render the contract good without a writing." (Benj. Sales [6th ed.], 255.) To-day the giving of earnest and part payment is practically synonymous. Some overt act is what the framers wanted in addition to words of mouth. The statute places no limitation on the manner in which payment shall be made. The payment may be in the form of any personal property. " The statute requires that he should pay some part of the purchase money. No doubt it must be taken, in its spirit, to mean anything or part of anything given, by way of consideration, which is money or money's worth. But the object was to have something pass between the parties beside mere words; some symbol like earnest money. (2 Black. Com. 448.) * * * One object of the statute was to prevent perjury. The method taken was, to have something done; not to rest everything upon mere oral agreement." (COWEN, J., in *Artcher* v. *Zeh*, 5 Hill, 200, 205. See, also, *Brabin* v. *Hyde*, 32 N. Y. 519.) Is the delivery by the vendee to the vendor of the former's check for the purchase price in and of itself a payment within the statute, regardless of what may thereafter become of the check? What is meant by the term " payment " as used in the statute? " Payment is not a technical term," says Mr. Justice MAULE in *Maillard* v. *Duke of Argyle* (6 M. & G. 40); " it has been imported into law proceedings from the exchange, and not from law treatises." (See *Turney* v. *Dodwell*, [1854] 3 E. & B. 136.) "A check, such as the one in question, is a negotiable instrument. It is a thing of value. It may be the subject of larceny. Checks are in common use, and pass from hand to hand. It is the usual and ordinary way of transacting business of any magnitude, and courts take judicial notice of such custom." (*Rohrbach* v. *Hammill*, 162 Iowa, 131.) In *Gould* v. *Town of Oneonta* (71 N. Y. 298, 307) the court said: " Cash payment of such large sums is usually made by check. In such a case, the check may be regarded as the representative of the money." Since that case was decided it has become the practice in the commercial world to make substantially all payments, large or small, by check. A check bearing the date on which it is issued is regarded in a different light from a promissory note. It is the commonly accepted method of payment in the business world to-day, and has largely supplanted the use of currency as a medium for barter and exchange. The giving of such a check is an overt act more easily proved and less susceptible to misconstruction or perjury than the payment of a sum in currency. (33 Harvard L. Rev. 870.) It is

objected that a draft or check of a debtor is only conditional pay-
ment and not satisfaction of the debt for which it is given in the
absence of some agreement to the contrary.    That, it is submitted,
has nothing to do with the application of the Statute of Frauds.
The statute is not concerned with the legal effect of the payment;
it says nothing about the payment being in satisfaction, wholly
or in part, of the vendor's claim.    The purpose of the statute is
fully satisfied by the physical delivery of the instrument, the overt
act indicating that there was a bargain between the parties.    How
is this outward manifestation affected by what may subsequently
happen to the instrument or other article that the buyer delivers
to the seller at the time of the bargain?    The rule as to conditional
payment operates solely for the protection of a creditor in the event
that the instrument is subsequently dishonored.    The learned
author of Benjamin on Sales treats the provision of the Statute of
Frauds relating to payment as somewhat analogous to a similar
provision under the Statute of Limitations Act, holding the term
" payment " to have been used in its popular sense.    (Benj. Sales
[6th ed.], 258; *Marreco* v. *Richardson*, L. R. [1908] 2 K. B. 584.)    So
in *Turney* v. *Dodwell* ([1854] 3 E. & B. 136) Lord CAMPBELL said:
" The statute [relating to limitations of actions] intending to make a
distinction between mere acknowledgments by word of mouth and
acknowledgments proved by the act of payment, it surely cannot be
material whether such payment may afterwards be avoided by the
thing paid turning out to be worthless.    *    *    *    In mercantile trans-
actions nothing is more usual than to stipulate for a payment by bills
where there is no intention of their being taken in absolute satisfac-
tion."    (P. 141.)    The dictum in *Hunter* v. *Wetsell* (84 N. Y. 549),
which emphasizes the necessity of the subsequent payment of the
check, is to the contrary.    But the entire reasoning of the case is
summed up as follows: " The purpose and object of the statute
should not be forgotten.    Its aim is to substitute some act for mere
words, to compel the verbal contract to be accompanied by some fact
not likely to be mistaken, and so avoid the dangers of treacherous
memory or downright perjury.    The delivery of the check was such
an act."    (P. 554.)    The purpose of the statute as so declared is
accomplished regardless of what may thereafter happen to the
check.    It is the delivery and acceptance of the check which con-
stitute the overt act required by the statute.    (*McLure* v. *Sherman*,
70 Fed. 190, 192.)    *Hessberg* v. *Welsh* (147 N. Y. Supp. 44) is not deci-
sive of the instant case.    There the check was given for part of the
purchase price, and the court said: " There is no evidence that the
check was given under any special agreement that the check should
constitute payment rather than the means of payment."    In the

instant case the check is for the full amount of the purchase price, and when the check was delivered to the seller he gave the buyer a receipted bill for the merchandise sold. Obviously the check in this case was received as a payment. The written exhibits so indicate, and I so find. Giving full effect, therefore, to the actual decision in *Hessberg* v. *Welsh* (*supra*), the vendee's check, although it was subsequently dishonored, was given in payment within the meaning of section 85 of the Personal Property Law. The defense of the Statute of Frauds must, therefore, fail. Motion to set aside the verdict of the jury and for a new trial denied. The defendant is allowed a ten days' stay of execution and thirty days to make a case. Submit order on notice.