Argued March 13, reversed June 12, 1928.

# MICHELIN TIRE COMPANY OF CALIFORNIA *v.* T. G. WILLIAMS.

(268 Pac. 56.)

**Sales—Counterclaim in Action for Price Alleging Agreement of Seller to Pay Service Fund and Special Premium Discount to Buyer, was Properly Pleaded and Properly Submitted to Jury.**

1. In action to recover price of tires and automobile accessories, answer alleging as counterclaim that, on sale of lease, fixtures and good will of retail store, plaintiff agreed to set aside 5 per cent of defendant's net purchases as service fund and to pay balance remaining therefrom to defendant, and that plaintiff agreed to allow premium discount on total net business over certain amount on account of which there were certain moneys due defendant, was sufficiently pleaded, and defendant was entitled to go to jury on defense so pleaded.

**Set-off and Counterclaim — Answer in Action for Price Alleging Seller's Violation of Agreement to Sell Goods on Credit Constituted Valid Counterclaim, if Contract Asserted were Valid (Or. L., 74, subds. 1, 2).**

2. In action to recover price of tires, answer alleging as counterclaim violation of seller's agreement to sell goods on credit in return for additional guaranty, if contract asserted were valid stated sufficient facts to constitute valid counterclaim, as pleading action arising on contract under subdivision 2, Section 74, Or. L., though not a cause of action arising out of the contract or transaction set forth in complaint under subdivision 1; contract asserted being void, however, under statute of frauds (Or. L., § 8168).

**Frauds, Statute of—Partial Performance Takes Oral Contract to Convey Land Out of Statute, but not Contract for Sale of Goods (Or. L., § 8168).**

3. While partial performance of oral contract in regard to conveyance of land may take a contract out of statute of frauds, rule of partial performance does not apply to contract for sale of goods, under section 8168, Or. L.

**Frauds, Statute of—Oral Agreement to Sell Goods on Credit in Return for Additional Guaranty Held Within Statute (Or. L., § 8168).**

4. Contract of seller of tire shop to sell goods to buyer on credit in return for buyer's additional guaranty, where contract was oral and guaranty was not introduced in evidence, was void and unenforceable under statute of frauds (Or. L., § 8168), and

---

2. Scope and effect of counterclaim under the Code, see note in 89 Am. Dec. 482. See, also, 24 R. C. L. 850.

3. See 25 R. C. L. 607.

only effect of seller's repudiation of contract was to discharge the guaranty.

**Sales—Evidence of Seller's False Representations Concerning Financial Standing and Goodwill of Business Justified Submission of Buyer's Counterclaim for Fraud.**

5.  In action by seller of tire shop to recover price of tires and accessories sold, evidence of seller's misrepresentations as to goodwill and standing of business *held* to justify submission to jury of counterclaim based on seller's false representations, where buyer was ignorant of crippled condition of company and inferiority of its goods, though buyer was a former bookkeeper and small stockholder in the company.

**Sales—Purchaser of Business was not Entitled to Counterclaim on Ground That Seller's Attempt to Compromise Debts Incurred in Previous Conduct of Business Injured Its Financial Standing.**

6.  Attempt of plaintiff taking over defunct corporation to compromise debts in connection with previous conduct of business, for which plaintiff was responsible, did not render plaintiff liable on counterclaim to subsequent purchaser of the business on ground that such conduct injured its financial standing.

Sales, 35 Cyc., p. 543, n. 89, 92.

From Multnomah: Ashby C. Dickson, Judge.

Department 1.

This is an action to recover the price of tires and other automobile accessories sold by plaintiff Michelin Tire Company of California, a corporation, to defendant T. G. Williams, who, during the times stated in the complaint, was doing business in Portland, Oregon, under the assumed name of the Western Tire Sales Company.

The complaint is brief, and, after stating the corporate capacity of plaintiff, alleges:

"That between November 1, 1922, and November 5, 1923, plaintiff sold and delivered to the defendant, at his special instance and request, goods, wares, merchandise and automobile tires and accessories of the reasonable value of $30,816.14, no part of which has been paid, or credit allowed as the equivalent of cash, save and except the sum of $23,588.36."

Then follows a prayer for judgment for $7,227.78 together with interest at 6 per cent per annum from November 1, 1923, until paid, and costs.

The defendant answered denying every allegation of the complaint except as admitted in its further and separate answer. Then follows three separate counterclaims too long to be recited in full, but in substance as follows:

It is alleged that about November 10, 1922, plaintiff and defendant entered into an agreement whereby defendant purchased of plaintiff the lease, fixtures and goodwill of a retail tire store formerly conducted by the Western Tire Sales Company, and agreed to become a dealer in the products of plaintiff upon the same terms and conditions and upon the same contract and prior agreement as had been theretofore in effect between plaintiff and the Western Tire Sales Company, and entered into possession thereof and commenced the purchase, sale and distribution as a dealer of the products manufactured by plaintiff; and that thereafter on December 14, 1922, plaintiff and defendant executed a written price and sales agreement then and theretofore represented by plaintiff to contain the identical terms and conditions of the dealer's contract theretofore in existence between the Western Tire Sales Company and plaintiff, a copy of which contract between plaintiff and defendant was annexed and marked Exhibit "A." Said agreement, among other matters, contained a clause providing that under the terms of said agreement plaintiff promised and agreed, among other things, that an amount equal to 5 per cent of the defendant's net purchases would be set aside by plaintiff as a service fund to the credit of defendant against

which fund should be charged the loss, if any, incurred by defendant in adjusting claims with the purchasers of plaintiff's product sold by defendant by replacing defective merchandise or replacing the same at a price below the regular net price to which defendant was entitled for such merchandise by virtue of the terms of said agreement, and that plaintiff further agreed to render the defendant periodical accounts of the state of said fund and at the expiration of said agreement, provided the total net purchases thereunder should be not less than $12,000 between the dates of October 25, 1922, and August 25, 1923, plaintiff would pay the balance remaining to defendant.

Plaintiff further agreed under and by virtue of the terms of said agreement to allow defendant a special premium discount of 5 per cent of his total net business provided the same amounted to $50,000 from the said date of said agreement to the twenty-fifth day of August, 1923, and that in case the net sales failed to reach the sum of $50,000 but exceeded the sum of $12,000 then plaintiff agreed to allow defendant a premium discount of 5 per cent upon his total net business amounting to a sum between said sum of $12,000 and $50,000.

Then follows this allegation:

"That defendant kept, complied with, and performed all the terms and conditions of said agreement made to be kept, complied with, and performed by him, and had no losses by reason of any such said adjustments because of defective merchandise except the sum of $12.18, and that the total net purchases by defendant from plaintiff from the said 25th day of October, 1922, to the said 25th day of August, 1923, amounted to the sum of $30,816.14, and that by reason thereof and under and by virtue of the

terms and conditions of said agreement, the said special premium for volume sold amounted to $1,540.81, and that the balance due defendant by reason of said service fund amounted to the sum of $1,528.63, which said amounts, in the total sum of $3,069.44, at all times hereinafter mentioned, have been and now are due and owing to defendant herein, and which have not been, but should be, credited on the account due from defendant to plaintiff.''

For a further and separate counterclaim defendant alleges:

''That between on or about the 1st day of January, 1923, and on or about the 1st day of March, 1923, plaintiff represented to defendant that a rising market in tires existed or was about to exist and that the increase in price resulting thereby would greatly increase defendant's profits and that it would be desirable and good business for defendant to take advantage of such rising market by placing a larger order than had been originally contemplated by defendant and that said increased profit was necessary for defendant in order that he could make sufficient profit to make his said retail tire business successful, and that should defendant furnish plaintiff with an additional guaranty in the sum of $15,000, plaintiff would and could extend to defendant credit in the sum of $25,000, and permit defendant to order on credit of its goods, wares and merchandise, according to the terms of said agreement, an amount equal to said sum of $25,000, and that defendant relied upon said representation and furnished said additional guaranty in the sum of $15,000, and prepared to take advantage of said expected rise in the price of tires and said advance in said tire market and proceeded to advertise and expand his business facilities, and employed salesmen sufficient to dispose of said products of plaintiff in an amount equal to said sum of $20,000, all of which caused great expense and cost to defendant, greatly in addition to the costs and expenses defendant would have incurred in contem-

plation of the sale of said products of said plaintiff equal to a less sum than said $25,000, or a sum of $15,000.

"That defendant relying upon said promises and representations of plaintiff as hereinbefore alleged began ordering tires in quantities based on his understanding and in accord with his preparations as hereinbefore set forth, relying upon and believing in plaintiff's promise that it would furnish him tires on credit equal to the sum of $25,000, and according to the terms of said agreement, and that on or about the 13th day of March, 1923, after furnishing defendant its goods, wares and merchandise as hereinbefore described, equal to the sum of about $13,000, plaintiff notified defendant that it would not and could not furnish defendant any further or greater amount of merchandise on credit without additional guaranty or capital paid into defendant's said business, notwithstanding plaintiff's agreement theretofore given as hereinbefore alleged to permit defendant to order and to deliver to defendant its goods, wares and merchandise on credit equal to the sum of $25,000, and withheld and withdrew further extension of credit from defendant and demanded and enforced cash payment of merchandise; that defendant was thereby prevented from ordering and obtaining merchandise from plaintiff at a time when the price thereof was rising and an opportunity to make a good and substantial profit thereon was possible to defendant, and that defendant was deprived of taking advantage of the rise in price by reason of the refusal of plaintiff to extend the credit in the amount agreed upon, to wit, the sum of $25,000, and defendant was deprived and prevented from making any profit whatever, and because of the expenses and costs he had incurred as hereinbefore alleged, he began to lose money and continued to lose money until on or about November 1, 1923, when he wholly failed and lost his entire business and all his interest therein.

"That by reason of plaintiff's failure to keep and perform its promises as hereinbefore alleged, to wit:

that at all times herein mentioned plaintiff wholly
failed to set aside for defendant's benefit, said 5 per
cent as a service fund and in no way paid to de-
fendant the said balance of said service fund on the
25th day of August, 1923, as it agreed to do, and
wholly failed to allow defendant said special volume
premium of 5 per cent all of which said failures to
keep and perform the terms and conditions of said
agreement existing between plaintiff and defendant
as hereinbefore alleged, and including said failure to
extend said credit in the sum of $25,000 as herein-
before alleged, caused defendant to entirely lose his
lease, location and the good will in connection with
said business, and all of said defendant's business,
all of which would have been of great value and profit
to defendant had plaintiff kept and performed the
terms and conditions of said agreement made to be
kept and performed by it and its various promises
as hereinbefore alleged, all to defendant's damage
in the sum of $20,000.''

There was a further and separate answer and de-
fense, the gist of which is, that on November 4, 1922,
the Western Tire Sales Company sold and conveyed
to plaintiff all its right, title and interest in and to
all its assets, including books, accounts receivable,
contract with plaintiff,. automobile, lease, furniture,
fixtures, name and goodwill, *et cetera,* and that plain-
tiff in consideration thereof, among other things,
agreed to pay all the obligations then due and owing
from and by the Western Tire Sales Company in full
with one exception, and to cancel its own claim
against the Western Tire Sales Company. Then
follow the allegations which read as follows:

''That on or about the 4th day of November, 1922,
plaintiff represented to defendant that it was the
assignee for the benefit of creditors of Western Tire
Sales Co., under a common law assignment, and that
it could and would satisfy the creditors of the West-

ern Tire Sales Co. by paying to them *pro rata* the proceeds of the sales of the assets of the Western Tire Sales Co., an Oregon corporation, and that, while so doing, it was assigning and transferring to defendant a certain very profitable contract which was, and would be, the same contract as then existing between plaintiff and said Western Tire Sales Co., which plaintiff then represented was, and had been at all times, the foundation of the existence of said Western Tire Sales Co., and also the business name and good will unimpaired of said Western Tire Sales Co., which plaintiff represented was worth thousands of dollars, and to be a going business and that at said time or on or about said 4th day of November, 1922, there was a great demand for Michelin products in the city of Portland.

"That said representations so made by plaintiff were false, in that plaintiff was not the assignee of said Western Tire Sales Co. for the benefit of creditors, but had agreed to pay all of the creditors of last said company, with one exception, in full, and that plaintiff intended to and did attempt to satisfy creditors of said company by partial payment, pretending to be the common law assignee and trustee for their benefit, when in truth and in fact as it well knew, it was bound to and had agreed to pay the said creditors of said company in full, with one exception, and that the said name and good will of said Western Tire Sales Co. was not unimpaired, but was, as plaintiff well knew, greatly impaired and injured by plaintiff's said conduct towards said creditors of said company, and that the contract which plaintiff was assigning to defendant, and which it then intended to assign to defendant, was not the same contract then and theretofore existing between plaintiff and said Western Tire Sales Co., in that said contract which plaintiff was assigning to defendant, as hereinbefore alleged, provided for less discount and profit to defendant than the said contract then and theretofore existing between plaintiff and said company; that moreover said representations were false in that,

because of plaintiff's attempt to satisfy said creditors by said partial payment methods, as hereinbefore alleged, the said business was not worth thousands of dollars as represented by plaintiff and there was no great demand for Michelin products in the city of Portland, all of which plaintiff well knew or should have known.

"That plaintiff made said representations to defendant with intent to defraud him, that defendant believed and relied upon said representations and was thereby induced to, and did, purchase from plaintiff the lease, fixtures, and equipment and the pretended good will of said retail tire store, theretofore belonging to Western Tire Sales company, a corporation, and then belonging to plaintiff, for the sum of $925 and became a dealer in plaintiff's products and thereafter entered into with defendant that certain contract hereto attached marked defendant's exhibit 'A,' which is hereby referred to and made a part hereof, all to the damage of defendant in the sum of $5,000.''

The answer concludes by demanding that the sum of $3,069.44 claimed in the first separate answer and defense be set off as a counterclaim against plaintiff's demand, for the further sum of $20,000, damages as prayed for in the second further and separate defense, and for $5,000 damages as set forth in the third further and separate answer and defense. The answer having been put in issue by a suitable reply, the case went to the jury, which returned a verdict against plaintiff in the sum of $8,000 and from a judgment in favor of defendant thereon plaintiff appeals.                                                      REVERSED.

For appellant there was a brief over the name of *Messrs. Hodges & Gay,* with an oral argument by *Mr. Charles M. Hodges.*

For respondent there was a brief over the names of *Mr. G. L. Rauch* and *Mr. E. M. Morton,* with an oral argument by *Mr. Rauch.*

McBRIDE, J.—This case was very loosely tried. At least one third of the transcript is taken up with objections and long arguments of counsel in regard to the admission and rejection of testimony, at the end of which the case probably appeared to the jury about as clear as the mud which perpetually gushes up on the devil's caldron in Yellowstone Park. They made a conscientious guess at results and that was necessarily all that they could do. The case comes here with the whole transcript of testimony as a bill of exceptions, and this court is expected to wade through this chaos of objections and make clear what the briefs of counsel should have developed. There is little of value to the profession or to the future administration of justice that can be brought out in the discussion and, therefore, the opinion will be brief.

1. The first separate defense considered in the light of the contract is properly pleaded and the defendant was entitled to go to the jury on that defense.

2. As to the second cause of defense, counsel for plaintiff urge that it does not state facts sufficient to constitute a valid counterclaim, because it is not "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim," and cites subdivision 1 of Section 74, Or. L., as authority therefor, but entirely ignores subdivision 2 of the same section which provides that a counterclaim may be pleaded "in an action arising on contract, any other cause of action arising also on contract and existing at the com-

mencement of the action." It suffices to say that the agreement to extend additional credit in case defendant should furnish additional security was clearly a contract in itself and was a complete contract so far as defendant was concerned when the security was furnished, unless it is rendered ineffectual by Section 8168, Or. L., which is as follows:

"(1) A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

"(2) The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured or provided, or fit or ready for delivery or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply.

"(3) There is an acceptance of goods within the meaning of this section when the buyer either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

3, 4. This is a case where the plaintiff says to the defendant in effect: "If you will give me an additional guaranty to the amount of $15,000, I will sell you goods on credit to the amount of $25,000." The guaranty is given, but the goods are not delivered

nor is any earnest given to bind the contract. Whatever may be the rule in equity the contract could not be enforced at law. The writer at first impression was inclined to the opinion that the delivery to plaintiff of the guaranty might be construed as an "earnest" to take the contract out of the statute, but the authorities are to the contrary: *Walker* v. *Nussey*, 16 Mees. & W. 302. We reluctantly conclude that while plaintiff's repudiation of the contract is censurable in morals its only effect legally was to discharge the guarantor from any legal liability to the plaintiff upon it. The guaranty was not in evidence. If it had recited the terms of the contract and had been accepted in writing by plaintiff or any authorized agent of plaintiff, such acceptance might have been a sufficient memorandum to have authorized this defense; but there is no evidence to that effect. While partial performance of an oral contract in regard to the conveyance of lands has been sometimes held in equity to take a contract out of the statute, such has never been the rule in regard to a contract for the sale of goods: Browne on the Statute of Frauds (5 ed.), § 118 et seq. The court erred in submitting this counterclaim to the jury upon the evidence adduced by defendant.

5, 6. We are of the opinion that there is evidence sufficient to justify the submission of defendant's third counterclaim to the jury. The plaintiff was in a position to know and must have known that at the time defendant took over the stock, fixtures and lease of the Western Tire Sales Company the business had practically no goodwill or standing, and that, beyond the value of the stock on hand and tangible property, it was selling to the defendant a ruined business of no value whatever and which had

practically failed to be a success. The defendant, who for a short time, a year or so before, had been engaged as a bookkeeper for the preceding corporation and a small stockholder in it, had, according to the substance of his testimony, sold his stock before the inferiority of plaintiff's goods had become apparent and quit the business upon such terms with Mr. Steele, the manager and principal stockholder, as to render it improbable that Steele would give him any useful inside information as to the prosperity and goodwill of the company at the time he turned it over to plaintiff. Defendant, in the light of his testimony, had left the company when it was at its best, and, after it had lost standing and goodwill, was induced to take it over and attempt to carry it on entirely ignorant of its change. Plaintiff knew all these things, and the representations of its manager were not mere "puffing" or expressions of opinion but expressions which he must have known to have been untrue. A more shrewd business man than defendant might have investigated further, but it was not unreasonable for him to have taken the representations of a large business corporation at their face value, and it would come with poor grace for the company to say: "You should have investigated further and not have relied on the statements of our representative." We do not approve of the action of the court in admitting testimony tending to show that the plaintiff attempted to compromise debts owing by Steele and which it had assumed thereby, as defendant claims, alienating former customers of the defunct corporation. The conclusion is too far-fetched and plaintiff's contract with Steele did not compel it to do more than to save Steele harmless. How they did this was a matter of their own

concern and plaintiff nowhere bound itself to conduct the settlement with regard to defendant's interest. They had a right to be steelly selfish and, if defendant's testimony is true, they were.

We have no means of knowing how far the submission of the second counterclaim to the jury may have influenced their verdict, but in a case where a plaintiff sues upon an indisputed demand for $7,000 and a verdict of $8,000 is rendered against it, it is clear that this counterclaim must have cut a considerable figure.

The judgment will be reversed and a new trial directed.                                    REVERSED.

RAND, C. J., and ROSSMAN and COSHOW, JJ., concur.