[Civ. No. 14484.   First Dist., Div. Two.   Dec. 29, 1950.]

JOHN R. SOUSA, Respondent, v. FIRST CALIFORNIA COMPANY (a Corporation), Appellant.

Bronson, Bronson & McKinnon for Appellant.

Thomas, Beedy, Nelson & King for Respondent.

NOURSE, P. J.—This is an appeal by defendant from a judgment on a verdict granting plaintiff $35,000 damages for the breach by defendant of an alleged oral agreement to purchase from plaintiff all the capital stock of Pacific Box Company, a California corporation, for $550,000.

Evidently to show satisfaction of the statute of frauds (section 4 of the Uniform Sales Act adopted into our law in sections 1724 and 1624(a) Civil Code and section 1973(a) of the Code of Civil Procedure) the complaint alleges that pursuant to the oral agreement defendant deposited in escrow the sum of $25,000 "for and on account of said purchase price." Further allegations of the complaint intended as basis of an estoppel to plead the statute have lost relevancy because at the trial the point with respect to estoppel was expressly withdrawn by plaintiff's attorney and no estoppel is argued on appeal.

Appellant urges that as a matter of law the negotiations of the parties had not yet resulted in an oral agreement; that even if such agreement had been concluded it would

be unenforceable under the statute of frauds; that no contract with plaintiff alone, who owned only part of the stock of Pacific Box Company was proved but, if any, a contract in behalf of all four stockholders of said company whereas there was no written authorization of plaintiff to act for the other three, and finally that there was no proof of damage.

On May 17, 1946, a conference of the parties and their attorneys was held in which were present among others the plaintiff, his attorney, Mr. John B. King, Mr. H. Th. Birr, Jr., executive vice-president of defendant, Mr. Roy A. Bronson, a director and attorney of defendant, and Mr. Harold R. McKinnon, another member of the attorney's firm representing defendant. The conference was held in the offices of said firm. Defendant, whose business is the underwriting of security issues, had for some time prior to the above date been negotiating the acquisition of all the stock of Pacific Box Company for the purpose of bringing it on the market. Plaintiff was president of that company and one of its four stockholders; plaintiff and a partnership of which he was a partner owned the two large holdings, and two friends personally connected with the business of the company owned the small ones. Defendant's representatives and auditors had been investigating the business of Pacific Box Company in detail and an offer to sell at the price of $550,000 had been made by plaintiff. Meanwhile plaintiff had become interested in the purchase for Pacific Box Company of certain interests in Canada which would provide it with an additional source of supply of lumber. When a few days earlier plaintiff had asked defendant's intention as to both transactions the answer had been in substance that defendant intended to proceed with the purchase of the Pacific Box stock but was not interested in the Canadian transaction. In the conference of May 17, 1946, agreement was reached as to the principle that if the assets of Pacific Box Company on May 31, 1946, would be below a certain level agreed upon (there is some discrepancy in the evidence as to the description of that level) the price of $550,000 would be adjusted downward accordingly and that seller (or sellers) would assume responsibility for any undisclosed liabilities or additional tax assessments. Then plaintiff declared that he wished a decision as to the definitive character of the agreement because he had to decide on the Canadian transaction by that same evening and wished to accept it if defendant would not take over the Pacific Box Company stock. Until this point there is little essential

conflict in the evidence. However with respect to the answer then given by the representatives of defendant the conflict is as sharp as possible; plaintiff and his attorney testified that Mr. Birr and one of his attorneys declared it was a deal, an agreement, whereas the representatives and attorneys of defendant testified that the answer given was that there could not be a definitive deal so long as there was no written contract containing also provisions with respect to different points not yet agreed upon. (Defendant mentions as such the manner in which the assets would be evaluated, the warranties to be given by sellers, the changing of the capital set-up of the corporation so as to provide for a large number of marketable low priced shares and the obtaining of permits from the commissioner of corporations for the sale of said shares to the public.) However the verdict must be considered as an implied acceptance of the position of plaintiff in this respect.

At any rate it was agreed that the attorneys of defendant would draft a written contract to be signed by the parties, which would not be ready the same day. Plaintiff then demanded a part payment on the purchase price and told Mr. Birr, according to plaintiff's testimony that he "had to have some tangible evidence that they were actually sincere in their desire to buy . . ." Mr. Birr and his attorneys objected but when plaintiff insisted they finally obtained from defendant's office a check for $25,000 to the order of plaintiff. Plaintiff testified about what happened then substantially as follows: The check was laid on Mr. Roy Bronson's desk. I asked about paying the check to me. "Mr. Birr and Mr. McKinnon both objected at the time to releasing the check. . . . I suggested inasmuch as Mr. Roy Bronson was not very active in all these discussions, if they did not want to release the check to me without any agreement at that time, it be left in Mr. Roy Bronson's possession. . . . [u]ntil the agreement Mr. Birr and Mr. Mason [read Mr. McKinnon] promised was to be completed in 24 hours was reduced to writing." Defendant introduced in evidence a letter dated May 17, 1946, from defendant to Mr. Roy Bronson, instructing him to deliver the check to plaintiff if and when a contract for the purchase of the Pacific Box Company stock would be entered into and to return the check to defendant if said agreement would not be executed before May 25, 1946, on which letter Mr. Roy Bronson acknowledged receipt of the check under the same date. The witnesses for

defendant testified that said exhibit was dictated and signed in the conference but plaintiff and his attorney testified that such had not taken place in their presence and that its content was unknown to them. No escrow instructions in writing were given by plaintiff.

A few days after the conference, before a draft contract was submitted, defendant withdrew from the transaction. Plaintiff did not institute any action against Mr. Roy Bronson for the delivery of the check, but brought this action against First California Company originally for the full purchase price of $550,000, later amended to a lower amount of damages.

On the basis of the above facts the judgment cannot be sustained. Even if we assume in support of the verdict, without so deciding, that there was substantial evidence, that in the conference of May 17, 1946, the parties reached an oral agreement as to the stock to be sold and the price to be paid for it, that they at the same time expressly stated their intention that the oral agreement would be definitive, notwithstanding the fact that a written agreement containing more detail would be prepared by the attorneys and signed, that said oral agreement was not so uncertain or incomplete as to make it necessarily invalid contrary to the expressed intention of the parties, and that plaintiff concluded said agreement solely in his own name as alleged (relying on his capacity to dispose also of the part of the stock not owned by him), then still the agreement would be unenforceable under the statute of frauds as cited before, which reads in part: ''A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall . . . give something in earnest to bind the contract, or in part payment. . . .''

It is solely on this part payment clause that respondent relies to show satisfaction of the statute. Appellant contests the applicability of that clause not on the ground that a check does not constitute part payment but on the ground that the check was not given to or received by plaintiff. Plaintiff demanded part payment, but obtained a deposit in escrow which, as will be shown, is not part payment under the statute.

An instrument is ''deposited in escrow'' when in accordance with an agreement to that effect it is deposited with a third person to be delivered to the other party to the

agreement on the performance of a specified condition (Civ. Code, § 1057; *Cannon* v. *Handley,* 72 Cal. 133, 140 [13 P. 315]; *Bailey* v. *Security Trust Co.,* 179 Cal. 540, 548 [177 P. 444]).

Until that condition is fulfilled the escrow holder does not hold as agent of the vendor alone but as agent or trustee for both parties and his power to transfer and obtain title for each of them is limited by the validly given instructions of both (*McDonald* v. *Huff,* 77 Cal. 279, 282 [19 P. 499]; *Shreeves* v. *Pearson,* 194 Cal. 699, 707 [230 P. 448]).

Only after strict compliance with the condition imposed can there be transfer of title and does the escrow holder begin to hold for the party thereby entitled (*Los Angeles City High School Dist.* v. *Quinn,* 195 Cal. 377, 383 [234 P. 313]; *Promis* v. *Duke,* 208 Cal. 420, 425 [281 P. 613]; *Shreeves* v. *Pearson, supra*). A recognized exception to the preceding rules in case of an escrow until an event certain to occur like the death of the grantor (See *Whitney* v. *Sherman,* 178 Cal. 435, 438 [173 P. 931]) is not involved here.

That what occurred in this case was such an escrow is shown not only by the express allegation to that effect in the complaint but also by plaintiff's quoted testimony as to the circumstances under which the check was given to Mr. Bronson. Because defendant refused to let plaintiff have the check immediately, it was placed in the hands of Mr. Bronson to be delivered to plaintiff on the condition only that the contract would be reduced to writing, i. e., that a contract in writing between the two principal parties would be signed. That condition was not fulfilled and therefore plaintiff did not become entitled to the check and the depositary did not hold the check for him. Neither can it be said that the condition was excused and that the transfer of the check to plaintiff became effective because defendant prevented its occurrence by withdrawing from the contract. To the rule that prevention by the promisor excuses the condition there is an exception in case the preventing action is allowed under the contract. (Restatement Contracts, § 295; 3 Williston on Contracts, § 677, p. 1956.) An oral contract under the statute of frauds is voidable at the election of either party (*Dessert Seed Co.* v. *Garbus,* 66 Cal.App.2d 838, 844 [153 P.2d 184]). Each party to such an agreement accepts the risk that the other party withdraws. Therefore, the withdrawal was permitted, did not excuse the condition of reduction of the agreement to writing and did not cause transfer of the check.

Plaintiff's further attitude shows recognition of the above conclusions. He did not bring action against Mr. Roy Bronson as his agent for delivery of the check; he did not credit the amount of the check on the purchase price when he sued defendant for that full purchase price and there is no evidence or contention that the amount of the check was ever credited to defendant on plaintiff's books. (Compare *Rabe* v. *Danaher*, 51 F.2d 777, 778.)

Can it be said that there was part payment which took the oral contract out of the statute notwithstanding the fact that no title to the check or to anything else passed to plaintiff? ▮ Payment is the performance of an obligation for the delivery of money (Civ. Code, § 1478). ▮ The performance may take place by the delivery and acceptance of other things of value instead of money, but there is only payment when the money or other things of value are given and accepted in discharge of the obligation in whole or in part. (*Borland* v. *Nevada Bank*, 99 Cal. 89, 95-6 [33 P. 737, 37 Am.St.Rep. 32]; *Low* v. *Warden*, 77 Cal. 94, 99 [19 P. 235].)

An inspection of the principal dictionaries shows that the general meaning of "payment" is the same as the above legal meaning: the discharge of an obligation or the giving of compensation. Where the technical legal meaning and the common meaning of the term used coincide and there is no indication that the Legislature intended a signification departing from both, the court ought to adhere to such meaning. ▮ We therefore cannot include in the meaning of payment satisfying the statute transactions which do not constitute a transfer discharging the obligation in whole or in part. Accordingly the two legal encyclopedias (37 C.J.S. 645; 49 Am.Jur. 583) both require that to constitute a payment as earnest or a part payment there must be an actual transfer to and acceptance by the seller of something of value as part of the price. The citation from Corpus Juris Secundum contains also the statement: ". . . a deposit of money with another to be paid over on delivery of the goods, does not constitute part payment." In *Leonard* v. *Roth*, 164 Mich. 646 [130 N.W. 208], the authority cited for the latter statement, a purchaser of stock, which at the time was collateral for an indebtedness of seller to a third party and the title of which was disputed, gave $600 to the attorney of seller to be used to free the stock and to be paid out only on its delivery; in the meantime purchaser would receive interest on the deposit; a later agreement required the attorney to

deposit the money in a bank and entitled purchaser to return of the money at his option if the stock was not delivered within six months. The court said (at p. 211 [130 N.W.]): "We do not regard the transaction with reference to the $600 as establishing a payment within the meaning of the statute of frauds. The payment required by the statute is the usual payment, as the term is commonly understood, whereby the vendee unconditionally transfers money or property to the vendor which the vendor unconditionally accepts in discharge, pro tanto, of the purchase price."

Respondent's contention that the above interpretation of the part payment clause is not supported by the authorities is without merit. The interpretation conforms to the normal construction of statutory language and finds support in the many cases which, although not directly in point here, refuse to broaden the interpretation of the part payment clause. See for instance: *Stockhammer* v. *Stevens*, 56 N.Y.S.2d 266; *Orr* v. *Hall*, 75 Neb. 548 [106 N.W. 656]; *Baltzen* v. *Nicolay*, 53 N.Y. 467, 471; *Behnke* v. *Bede Shipping Co.* (1927) 1 K.B. 649, 659; *Barnsdall State Bank* v. *Dykes*, 26 F.2d 696; *Anchor Trading Corp.* v. *Joseph T. Ryerson & Son*, 69 N.Y.S.2d 844, affirmed 297 N.Y. 817 [78 N.E.2d 611]; *Clinton Paper Co.* v. *Mills Paper Co.*, 83 N.Y.S.2d 875; *Michelin Tire Co.* v. *Williams*, 125 Ore. 689 [268 P. 56]; *Hewson* v. *Peterman Mfg. Co.*, 76 Wash. 600 [136 P. 1158, Ann.Cas. 1915D 346, 51 L.R.A.N.S. 398]; *Patterson* v. *Beard*, 227 Iowa 401 [288 N.W. 414, 125 A.L.R. 393]; *Cassidy* v. *Kraft-Phenix Cheese Corp.*, 285 Mich. 426 [280 N.W. 814, 817] containing our quotation from *Leonard* v. *Roth, supra,* and the many cases which hold that the giving of a check only satisfies the statute if it is accepted unconditionally as constituting payment. See Annotation 8 American Law Reports 2d 251, 254-58.

The only authority cited by respondent for a broader interpretation of the part payment clause is *Charles R. Ablett Co.* v. *Sencer*, 130 Misc. 416 [224 N.Y.S. 251], in which case it was held that the giving by buyer of a check for the full purchase price, for which he received seller's receipted bill, was payment taking the oral contract out of the statute, notwithstanding the fact that the buyer stopped payment on the check, the court stating at page 255 [224 N.Y.S.]: "It is objected that a draft or check of a debtor is only conditional payment, and not satisfaction of the debt for which it is given, in the absence of some agreement to the contrary. That, it is submitted, has nothing to do with the

application of the statute of frauds. The statute is not concerned with the legal effect of the payment; it says nothing about the payment being in satisfaction, wholly or in part, of the vendor's claim. The purpose of the statute is fully satisfied by the physical delivery of the instrument, the overt act indicating that there was a bargain between the parties.'' Although there is more good authority that the giving of a check satisfies the statute even if it is taken in conditional payment (see § 205, Restatement Contracts, Illustration 1), the above reasoning of *Charles R. Ablett Co.* v. *Sencer* is nowhere followed and we do not accept it. 1 Williston on Sales, p. 242, gives the following better reasoning which does not require an unduly broad interpretation of the meaning of ''payment'': ''The condition of non-payment is best regarded as subsequent. From the time the instrument is received the recipient has absolute control of it, may use it as he pleases and, aside from the Statute of Frauds, cannot rescind the transaction if the instrument is not fraudulent and has not been dishonored. Consequently if the instrument is not fraudulent the seller should be regarded as having received payment, with a right to renounce it on a possible later contingency.'' ▮ The majority view however is still that the giving of a check only satisfies the statute if it is accepted as unconditional payment. See Annotation 8 A.L.R.2d 251, 254-58, *supra*. Obviously even a reasoning analogous to the one of Williston cannot be applied in our case because plaintiff never obtained possession of or title to the check.

Even if an interpretation of payment in satisfaction of the statute wider than the normal legal import of the term were permitted under certain circumstances—*quod non*—there would be no rational ground to apply it here. ▮ Purpose of the statute of frauds is to prevent fraud and perjury with respect to certain agreements by requiring for enforcement the more reliable evidence of some writing signed by the party to be charged (*Sherwood* v. *Lowell*, 34 Cal.App. 365, 375 [167 P. 554]; 37 C.J.S. 513). The rationale of the provision permitting part payment to satisfy the statute is that when an overt act has taken place which presupposes that a sale or agreement to sell has been concluded the danger of fraudulent invention and perjury is diminished. The deposit in escrow here offered as such overt act need not necessarily be preceded by the conclusion of an agreement to sell or sale. A deposit is also made ''merely as evidence that a party intended in good faith to enter into a contract upon terms

to be agreed on thereafter," (*Karp* v. *R. Ritter & Co.*, 110 Misc. 668 [180 N.Y.S. 769, 770]) or as plaintiff expressed it as "evidence that they were actually sincere in their desire to buy." That a definitive oral agreement had been arrived at remained supported solely by the oral testimony of plaintiff and his attorney. Although the proof of actual part payment must sometimes also rest in parol there can be no good reason to extend the part payment provision by artificial construction to transactions which do not provide any of the protection which is the purpose of the statute. (Compare *Mahoney Bros.* v. *Hansen Packing Co.*, 67 Mont. 120 [215 P. 506, 508].)

Finally, we wish to mention a case which superficially might seem to be in conflict with *Leonard* v. *Roth, supra,* and to support the petition of respondent. In *Alexander* v. *Moore,* 19 Mo. 143, it was held that when a firm which had bought cattle orally deposited money with a third party to be delivered to seller provided he deliver the cattle to buyer within a stated time and otherwise to be returned to purchaser and seller timely tendered the cattle to buyer but purchaser refused to accept it the statute was satisfied by part payment. No reasoning is given, the court being only concerned with the circumstance that in the escrow instruction the name of seller was incorrectly stated. However, the result may possibly be explained by holding that the condition was fulfilled by seller's tender and that thereafter the depositary held for him. (Compare *Gambrell* v. *Tatum* (Tex.Civ.App.) 228 S.W. 287, 290.)

We conclude that as a matter of law there was here no part payment satisfying the statute.

Nowadays earnest and part payment are regarded as having the same meaning (37 C.J.S. 643; 49 Am.Jur. 583; 1 Williston on Sales, § 97, note 19) the former meaning as something given to bind the bargain and not to be applied on the purchase price having become obsolete. It is not contended that any such obsolete transaction has taken place in this case.

The judgment is reversed with instructions to the trial court to enter judgment for defendant.

Dooling, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 26, 1951. Carter, J., voted for a hearing.