[Civ. No. 19475. First Dist., Div. One. June 5, 1961.]

GEORGE MARDIKIAN, Respondent, v. PARADOR MINING COMPANY, INC. (a Corporation), Appellant.

Young, Rabinowitz & Chouteau, Walter Chouteau and Frank T. O'Neil for Appellant.

Shirley, Saroyan, Cartwright & Peterson, S. M. Saroyan and Jay R. Martin for Respondent.

HOYT, J. pro tem.*—The complaint alleges the sale of a tractor and bullgrader by respondent to appellant for $10,000, the reasonable value of said equipment, in November 1956. The appellant's answer alleges that respondent offered the loan and free use of said equipment to appellant in its uranium mining venture until commercial ore was found by appellant. That if appellant was financially able it would then purchase the equipment from respondent and pay him the fair market value thereof, and that respondent accepted said offer. The tractor had been used by respondent in building a lake on his ranch at St. Helena. The appellant was engaged in mining in New Mexico.

Elizabeth Adoor was the president of the appellant Parador Mining Company, Inc., and also was the secretary and bookkeeper of the respondent George Mardikian. The respondent was a stockholder and director of the appellant at that time. Respondent testified that Mrs. Adoor on several occasions

---

*Assigned by Chairman of Judicial Council.

asked him to sell the equipment to the mining company but he refused because he needed it. Finally in November 1956, he acceded to the request and told Mrs. Adoor that the equipment could be picked up at any time at his ranch; that the price was to be $10,000 payable out of the first money that the mining company realized from its leaseholds, and the transportation costs were to be borne by it. Mrs. Adoor denied this and testified that the only agreement was for Parador Mining Company to borrow the tractor and grader. The equipment was transported to New Mexico by a Dean Turner. The foreman of the Mardikian ranch had recommended Turner to Mrs. Adoor. Mrs. Adoor contacted Turner. He took the equipment to his yard and then phoned her that the tractor was too high to be transported on the highways and requested permission to have the yoke of the bulldozer blade cut off so as to reduce its height. Mrs. Adoor consulted with someone other than respondent and phoned back that it would be all right to cut the yoke. Turner transported the equipment to New Mexico, and, believing respondent was the shipper billed him for the transportation charges. Mrs. Mardikian paid the bill in respondent's absence, and when respondent returned he obtained the transportation costs from Mrs. Adoor.

Before the alleged sale Mardikian had told Mrs. Adoor that there was no trouble with the tractor and that it was in good condition. However, after its arrival in New Mexico it would not run. A mechanic tore it down and discovered that it needed repairs that would cost about $3,000. He testified that all rollers, idlers, rails and sprockets were worn out, and the head of the engine was cracked. There was a question as to whether the transportation company drained the engine before taking it into the cooler weather of New Mexico. Three witnesses for plaintiff testified that the tractor was in good condition when delivered to Turner. On this conflicting evidence the court found that the tractor was in good and workable condition when Mardikian delivered it and that through no fault of his the repairs became necessary. The trial court gave judgment for respondent for $7,000, plus interest at 7 percent from September 10, 1957.

The appellant urges that the cause of action is barred by the statute of frauds in that it was an oral contract for the sale of goods of a value exceeding $500. Civil Code, section 1624a, subdivision (1), provides: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upward shall not be enforceable by action

unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.''

The only payment to respondent was a check to reimburse him for the transportation charges. This was not part payment or earnest money because it was not part of the price. (*Sousa* v. *First California Co.,* 101 Cal.App.2d 533, 540 [225 P.2d 955].) Admittedly there was no note or memorandum in writing; therefore, the contract being oral and for more than $500, is within the statute of frauds unless the buyer has accepted and received the goods. That the appellant received the tractor is not disputed, but Civil Code, section 1767, subdivision (1), provides: ''Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract.'' However, there are certain exceptions to this section. Section 1768 of the Civil Code reads: ''The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and *he does any act in relation to them which is inconsistent with the ownership of the seller,* or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them.'' (Emphasis added.) It will be recalled that appellant consented to the cutting of the yoke on the tractor so the blade could be removed. This was done without respondent's consent and was inconsistent with title remaining in respondent. The trial court could, therefore, reasonably conclude that appellant had accepted the equipment. This conclusion is also supported by the fact that Mrs. Adoor lived in San Francisco. She had seen the tractor at the Mardikian ranch. It was about November 20, 1956, that respondent advised Mrs. Adoor that appellant could buy the tractor, and it was about December 18, 1956, that the transportation company picked it up. If Mrs. Adoor had planned to have the tractor inspected it would be reasonable to believe that she would have done it, before expending in excess of $600 for insurance and shipping charges to New Mexico, during the approximate month between the time respondent told her the appellant could buy

the tractor and the shipment to New Mexico.

The trucker believed that respondent instead of Mrs. Adoor was the shipper. This could easily happen, since she was employed in respondent's office. Also, there is testimony that respondent made a claim against the trucker concerning the condition of the tractor upon its arrival in New Mexico. This "claim" was a phone call by Mrs. Adoor. She phoned Turner and told him that on delivery the tractor would not operate and that "they had speculated with the thought that perhaps water had been left in [it] . . . and it cracked the heads, and Mr. Turner said that he would investigate." From the evidence in the record the most that can be said concerning these two facts is that they are equivocal, concerning which the decision of the trial court is final. ██ ██ In *Overton v. Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757], it was said: ". . . it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. . . . We are satisfied from an examination of the . . . transcript that the findings are amply supported by the evidence."

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.